Case 41.—PROCEEDINGS BY SAM STONE, PETITIONER, AGAINST THE CITY OF PADUCAH FOR THE CONSTRUCTION OF CERTAIN CITY ORDINANCES CONCERNING THE WORKING OF PRISONERS.—April 19.

## Stone v. City of Paducah.

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for Defendant. Plaintiff appeals. Affirmed.

Ordinances—Police Courts—Second Class Cities—Jurisdiction—Labor Penalty—Good Behavior—Insane Persons, &c.—Trial by Jury.

1. Municipal Corporations—Police Courts—Second Class Cities—Jurisdiction—Sec. 142 of the Constitution provides "that the jurisdiction of justices of the peace shall be co-extensive with the county, and equal and uniform throughout the State." Sec. 143 provides "that a police court may be established in each city and town in this State, * * * with such criminal jurisdiction as justices of the peace have." Sec. 1093, Ky. Stats., provides "that justices shall have jurisdiction exclusive of circuit courts in all penal actions the punishment of which is limited to a fine not exceeding $20, and concurrent with circuit courts of all penal cases the punishment of which is limited to a fine not exceeding $100, or imprisonment not exceeding fifty days or both." It will thus be seen that the Constitution does not place any limitation upon the jurisdiction that may be granted to justices of the peace by the general assembly, but does limit the jurisdiction that may be given police and city courts to whatever jurisdiction has been given the justice's courts, and as the general assembly has seen proper to limit the jurisdiction of justices to offenses where the penalty does not exceed $100 fine and fifty days in jail, therefore, the jurisdiction of police and city courts is within the same limits, and section 3148, and that part of section 3147, Kentucky Statutes, which gives the police and city courts jurisdiction in excess of the penalty stated, are void, being in violation of the State Constitution.

Stone v. City of Paducah.

2. Labor Penalty—Good Behavior—Insane Persons, &c.—The language in section 3151, Kentucky Statutes: "Persons committed by said (police) court for default of surety for good behavior or to keep the peace and all others whom the city is bound to maintain when committed to jail," does not refer to persons convicted of crime, but includes idiots, insane persons and inebriates, and as to these persons, not in jail because of their conviction of an offense, they can not be compelled to labor, for such would be involuntary servitude and in violation of both State and Federal Constitutions.

3. Authority of Cities—Under sub-secs. 23 and 25 of sec. 3058, Ky. Stats., cities of the second class have full and complete power to enact any and all ordinances, and fix fines and penalties to maintain the peace, good government and general welfare of the city, the only limitation being that the penalties for a violation of the ordinances shall not be less than that imposed by the statute, and not to exceed the jurisdiction of the police court as fixed by the statutes and Constitution, and not in conflict therewith.

4. Trial by Jury—So much of the charter of cities of the second class which deny a right to a trial by jury where the penalty is $25 or less, is not unconstitutional, and neither is it in violation of the State or Federal Constitutions to inflict labor penalties on persons convicted of misdemeanors.

J. M. WORTEN for appellant.

1. The charter for cities of the second class does not authorize the passage of ordinances for working prisoners on the streets under any circumstances, but only authorizes working them inside a workhouse for reasonable cost of board.

2. The ordinances in question have been repealed, and are not only unauthorized by the city's charter, but are in conflict with the charter and the Constitution.

3. Imprisonment, or imprisonment at hard labor, must be imposed by a verdict of a jury and a judgment of a court, and not by a legislative department in a summary enactment.

4. Municipal corporations can only exercise powers expressly granted, and such others as may be necessary to carry the expressly granted powers into execution.

5. Any fair, reasonable doubt concerning the existence of power in a municipal corporation, is resolved against it, and the power denied.

AUTHORITIES CITED.

Secs. 3063, 3363, 3528, 3637, 3704, 2916, 3058, 3151, 3148, 3162, 3662, 3172 of the Ky. Stats.; Lowry v. City of Lexington, 24 Ky.

Stone v. City of Paducah.

Law Rep., 516; Topeka v. Boutwell, 27 L. R. A., 602; Peoples v. Saddler, 97 N. Y., 146; Elliott on Criminal Law, sec. 926; Ex Parte Harrison, 63 Cal., 299; Herron v. The Commonwealth, 79 Ky., 38; Cornelison v. Commonwealth, 84 Ky., 583; Robinson's Kentucky Criminal Law, sec. 44, p. 63; Eldridge v. Commonwealth, 10 Ky. Law Rep., 176; Brieswick v. Mayor, &c., 21 Am. Rep., 240; Morrison v. Commonwealth, 21 Ky. Law Rep., 1816; Robinson's Kentucky Criminal Law, sec. 776; State v. Bright, 58 Am. Rep., 155; City of St. Louis v. Bell Telephone Co., 9 Am. St. Rep., 370, and note; Markley v. Mineral City, 65 Am. St. Rep., 776; Winchester v. Redmond, 57 Am. St. Rep., 822; Chicago G. L. Co. v. People's G. L. Co., 2 Am. St. Rep., 124; Collins v. Hatch, 51 Am. Dec., 465; Jacksonville Elec. L. Co. v. City of Jacksonville, 51 Am. St. Rep., 24; Smith on Municipal Corporations, sec. 94; Bolton v. Vellines, 64 Am. St. Rep., 737; Dillon on Municipal Corporations, sec. 89, 4th Ed.; Dillon on Municipal Corporations, sec. 91, 4th Ed., note; McCord v. Pike, 2 Am. St. Rep., 92, note; Metropolitan Life Ins. Co. v. Darenkamp, 23 Ky. Law Rep., 2249.

CAMPBELL & CAMPBELL and E. H. PURYEAR for appellee.

This action involves solely the construction of certain ordinances of the city of Paducah, and is instituted by appellant in pursuance to sec. 3063, Ky. Stats,, and the allegations of fact set out in the petition, answer and amended answer are mainly uncontroverted. The pleadings consist of a petition, answer and amended answer.

### THE PETITION.

1. The petition, as will be noted, after alleging the petitioner's residency and his right to institute this proceeding, and the transfer of the city of Paducah from a third to a second class city, alleges that the city of Paducah, while a city of the third class, duly and regularly passed an ordinance, entitled "Overseer of chain gang," and after a recitation of this fact, quotes sec. 1 of said ordinance. He then alleges that the city of Paducah, while operating under charter of city of the third class, passed another ordinance styled "City prison and keeper," and quotes therefrom secs. 3 and 12. Again he alleges that while the city was still in the third class another ordinance was passed and adopted, entitled "Street inspector," and quotes therefrom secs. 1, 2 and 3. To this petition a general demurrer was filed by the city of Paducah after said city had been made a party defendant to the proceedings; the court took said demurrer under advisement and overruled same, and subsequently the city filed her

Stone v. City of Paducah.

answer and amended answer. It is to this demurrer that we desire to call your Honors' particular attention first.

The petitioner has most admirably succeeded in making clear what it is that he desires, but fortunately for the sake of the good preservation of society when one goes into a court of justice not only are one's immediate desires looked into, but all the exigencies of the subject matter are taken in review, and this strict obligation is placed upon the courts in construing a statute or ordinance.

We take the liberty of quoting from Black on Interpretation of Laws, section 74, page 166:

"In the construction of a statute, in order to determine the true intention of the Legislature, the particular clauses and phrases should not be studied as detached and isolated expressions, but the whole and every part of the statute must be considered in fixing the meaning of any of its parts.

"There are two principal reasons for this rule. In the first place, the force and significance of particular expressions will largely depend upon the connection in which they are found and their relation to the general subject matter of the law. The Legislature must be understood to have expressed its whole mind on the special subject to which the legislative act is directed; but the vehicle for the expression of that meaning is the statute. considered as one entire continuous act, and not as an agglomeration of unrelated clauses. Each clause or provision will be illuminated by those which are cognate to it and by the general tenor of the whole statute, and thus obscurities and ambiguities may often be cleared up by the most direct and natural means. In the second place, effect must be given, if it is possible, to every word and clause of the statute, so that nothing shall be left devoid of force. It must be so constructed 'ut res magis valeat quam perat.' To this end, each provision of the statute should be read in the light of the whole."

## LIST OF AUTHORITIES.

Black on Interpretation of Laws, sec. 74, p. 166; Sec. 3363, Ky. Stats.; Sec. 3151, Ky. Stats.; Sec. 3196, Ky. Stats.; Anderson's Law Dictionary (Inconsistent); Anderson's Law Dictionary (Incompatible); Anderson's Law Dictionary (Repugnant); Webster's Dictionary; Century Dictionary Encyclopedia; Blackstone's Commentaries, vol. 1, p. 90; Beals v. Hale, 4 Howard, 51; Sec. 1136, Ky. Stats.; Sec. 1379, Ky. Stats.; Black on Interpretation of Laws, secs. 8, 24, 27, 29, 34, 35, 41, 44, 53, 57, 74 and 75; Sutherland on Statutory Construction, secs. 137, 138 and 256; Ky. Stats., sec. 3172; Lowry v. City of Lexington, 24 Ky. Law Rep., 516;

Ky. Stats., sec. 3118; O'Bryan, Clerk v. City of Owensboro, 24 Ky. Law Rep., 469; Topeka v. Boutwell, 27 L. R. A., 593; Mason & Foard Co. v. Main Jellico Mountain Coal Co., 87 Ky., 467; State v. McCaulley, 15 Cal., 429; People v. Brooks, 16 Cal., 11; In re Burrow, 55 Ark., 275; Young v. Beardsley, 11 Paige, 93; Ex Parte Small, 81 Ala., 85; Holland v. State, 23 Fla., 123; Monroe v. Meuer, 35 La. Ann., 1192; In re Bergin, 31 Wis., 383; Meyers v. Stafford, 114 N. C., 234; Durham v. State, 89 Tenn., 723; State v. White, 44 Kans., 514; Ex Parte Bedell, 20 Mo. Apps., 125.

OPINION BY JUDGE NUNN.—Affirming.

In the month of March, 1902, the city of Paducah was transferred from the third to the second class. While a city of the third class it passed the following ordinances:

"ORDINANCE NO. 14.

"Sec. 1. It shall be the duty of the overseer of the chain gang to take charge during the daytime of all prisoners confined in the city prison under judgment of the police court when there is work to do and the weather will admit, and work them on the streets, alleys or other public works of the city of Paducah.

"Sec. 2. The keeper of the city prison shall receive and safely keep therein, in close confinement, all persons arrested by the city police officers, and all persons ordered thereto by judgment of the Paducah police court, or other court of competent jurisdiction, until discharged by due course of law, except when such persons may be in charge of the street inspector, or other person duly authorized, at work on the streets or other public works of the city.

"Sec. 12. In all cases of conviction in the police court of Paducah, the defendant shall stand committed to the city prison until the fine and costs in such case shall be paid or replevied, not to exceed however one day for each dollar of such fine and costs, and the defendant in such case, if a male, shall

be required to work during such period of confinement on the public streets or alleys or at the gravel pits of the city of Paducah, not exceeding ten hours each day. All male persons sentenced to confinement in said prison shall be worked in the same way during the period of imprisonment, and all such persons when in the city prison, shall be considered in the custody of the keeper of the city prison and when taken out for the purpose of being worked to be in the custody of the marshal, street inspector, overseer of the chain gang or policeman, whichever may have them in charge. And to prevent escapes, such officer having prisoners in charge, may in his discretion, attach a chain and a ball of fifty pounds weight to any prisoner."

"ORDINANCE NO. 19.

"Sec. 1. The office of street inspector is hereby created. The street inspector shall be elected by the common council in the month of December in each year. He shall hold his office for one year and until his successor is duly elected and qualified.

"Sec. 2. He shall build sewers and bridges, keep the same in good repair; see that the streets, alleys and sidewalks are kept clean and in good condition; superintend in person the cleaning thereof; devote his entire time to the duties of his office and under the direction of the mayor employ hands, carts and wagons and other forces necessary to those objects and in working on any of the streets, alleys, wharves, or other public place in the city he shall use the prisoners of the city confined in the city prison.

"Sec. 3. The overseer of the chain gang and the prisoners in his charge in working upon any of the streets, alleys, wharves or other public place in the

city, shall be under and subject to the orders and control of the street inspector. If any such prisoners while on any public work shall behave in a riotous or disorderly manner or refuse to work or obey the orders of the street inspector or other person placed over them, or shall attempt to escape, they shall be placed in solitary confinement or subjected to such slight punishment as may be ordered by the inspector, but in no case shall they be cruelly treated.''

The appellant brought this action under sec. 3063 of the Ky. Stats. of 1903, claiming that the charter of cities of the second class does not authorize the officials of cities of that class to enact or enforce such ordinances, and that they are therefore void. By sec. 3264 of the statutes, which relates to the transfer of cities from one class to another, it is provided, after providing for the transfer, that "thereafter such city shall be governed by and under the general laws relating to the class to which it has been assigned, but the transfer from one class to another shall not in any wise impair or affect any ordinance or by-law theretofore enacted by such city unless the same is in conflict with the general laws relating to cities of the class to which it has been assigned and to such extent only shall any ordinance or by-law be repealed by the transfer, nor shall the powers, rights, duties or obligations of the city be in any wise affected by the transfer of any officer or employee thereof or any debtor or creditor of the city." The appellant contends that the only provisions contained in charters of cities of the second class with reference to compelling persons to labor are found in sec. 3148 and sec. 3151, and that these provisions provide for the work to be done only in the city jail or workhouse, and as the ordinances referred to authorize and require persons to labor upon the streets, alleys,

and gravel pits, they are therefore void. We are of the opinion that the sections of the statutes referred to have no application to the question at issue. By sec. 3148 the Legislature gave to cities of the second class the extraordinary power of giving final trials to persons charged with petit larceny and vagrancy—a power not given to any other class of cities in the Commonwealth—and required that persons convicted of such offenses should be sent to labor in the city prison or workhouse. This section is void. The Legislature had no power to grant authority to the police or city court of cities of the second or any class to give a final trial to persons charged with the offenses of petit larceny or vagrancy; the punishment for the one being not less than 30 days' nor more than 12 months' confinement in the county jail. The other, upon conviction, could be bound out to labor for a term not longer than 12 months. Sec. 143 of the present Constitution provides: "A police court may be established in each city and town in this State, with jurisdiction in cases of violation of municipal ordinances and by-laws occurring within the corporate limits of the city or town in which it is established, and such criminal jurisdiction within the said limits as justices of the peace have." We find that justices of the peace have jurisdiction, as provided by sec. 1093 of the statutes, as follows: "Justices shall have jurisdiction, exclusive of circuit courts, in all penal cases, the punishment of which is limited to a fine not exceeding twenty dollars and jurisdiction concurrent with circuit courts of all penal cases, the punishment of which is limited to a fine not exceeding one hundred dollars or imprisonment not exceeding fifty days or both." By sec. 142 of the Constitution it is provided "that the jurisdiction of justices of the peace shall be

coextensive with the county and shall be equal and uniform throughout the State.'' It will thus be seen that the Constitution does not place any limitation upon the jurisdiction that may be granted to justices of the peace by the General Assembly, but leaves the matter within its discretion, but does limit the jurisdiction that may be given police and city courts to whatever the justices have; and, as the General Assembly has seen proper to limit the jurisdiction of justices to offenses where the penalty does not exceed $100 fine and 50 days in jail, therefore, the jurisdiction of police and city courts is within the same limits, and sec. 3148 and that part of sec. 3147 which gives to police and city courts jurisdiction in excess of the penalty stated are void, being in violation of the State Constitution.

Sec. 3151 is as follows: ''That all persons committed by said court for default of surety for good behavior or to keep the peace, and all others whom the city is bound to maintain when committed to jail, shall be confined in the city workhouse or prison, and they may be compelled to labor as many days at such sum per day as may be necessary to defray the reasonable cost of their board, to be, from time to time, determined by the mayor and general council.'' This section has no application to the ordinances in question, as we understand them. The language, ''persons committed by said court for default of surety for good behavior or to keep the peace and all others whom the city is bound to maintain when committed to jail,'' does not refer, in our opinion, to persons convicted of crimes. By sub-sec. 14 of sec. 3058 the councils of cities of the second class are authorized to provide for the support, maintenance, and confinement of idiots, insane persons, and inebriates. These persons are the ones

meant by the words "all others whom the city is bound to maintain when committed to jail," as used in sec. 3151. And as these persons are in jail not because of their conviction of any offense, they can not be compelled to labor, for such would be involuntary servitude, and in violation of sec. 25 of the State Constitution and the thirteenth amendment to the Constitution of the United States. Sec. 25 of the State Constitution is as follows: "Slavery and involuntary servitude in this State are forbidden, except as a punishment for crime, whereof the party shall have been duly convicted." The thirteenth amendment is to the same effect. But even if sec. 3151 was valid, it does not compel the persons to labor in the city prison or workhouse.

We are of the opinion that the ordinances in question are not in conflict with the charter of cities of the second class, except in so far as they may, authorize the working of a person before his conviction of an offense. In fact, the city council of second class cities has the power to enact such ordinances by virtue of sub-secs. 23 and 25 of sec. 3058 of the statutes, which are as follows:

"The general council shall have power by ordinance to impose, enforce and collect fines, forfeitures and penalties for the breach of any provision of this act or any ordinance; to punish the violation of any provision of this act, or any ordinance of this city, by, fines or imprisonment, or by both fine and imprisonment; and no ordinance shall fix a penalty for a violation thereof at less than that imposed by statute for the same offense.

"To pass all such ordinances, not inconsistent with the provisions of this act or the laws of the State, as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade,

commerce and manufactures, and to enforce the same by fines and penalties; and any enumeration of subjects and matters herein to be regulated shall not be construed as a limitation upon this general power.''

These provisions, construed together, show that it was the intention of the General Assembly to grant to the council of cities of the second class full and complete power to enact any and all ordinances and fix fines and penalties to maintain the peace, good government, and welfare of the city; the only limitation being that they could not fix fines and penalties for violation of the statutes at less than that imposed by the statutes, and not to exceed the jurisdiction of the police court as fixed by the statutes and Constitution, and to be not in conflict with the Constitution and statutes.

It is contended, as the powers and duties of the council are many of them specifically named and defined in sec. 3058 of the statutes, that its powers are limited to the powers named and defined, and, as there is no specific reference giving the council power or authority by ordinance to inflict upon persons convicted of crime the work penalty upon their failure to pay or replevy same, therefore, the power of the council to enact such an ordinance is inhibited by the charter. This is the general rule of construction, and there is also another general rule—that the council has no authority to pass an ordinance unless the same is authorized in express terms or by necessary implication. But it appears that the General Assembly, fearful that the above rules might be applied, added the following to sub-sec. 25 of sec. 3058, supra: ''And any enumeration of subjects and matters herein to be regulated shall not be construed as a limitation upon its general power;'' showing that it was the intention to give the council complete

power to pass any and all ordinances and fix penalties to insure the peace, good government, and welfare of the city, only to be confined within the limits above referred to.

Appellant contends that the ordinances are void because by them a person charged with an offense is deprived of the right of trial by jury. By sec. 248 of the Constitution it is provided that a jury of six in inferior courts may try a person charged with a misdemeanor. The charter permits a defendant to demand a jury where the penalty which may be assessed can exceed $25, and this court, in the case of City of Mt. Sterling v. Holly, 108 Ky., 621, 22 Ky. Law Rep., 358, 57 S. W., 491, discussed this point fully, and decided the matter contrary to appellant's contention, and determined that the denial of the right of a trial by jury in these trivial matters in no way violates the constitutional rights of the defendant.

Appellant also contends that since the adoption of the thirteenth amendment to the Federal Constitution, and of the present State Constitution of this State, forbidding involuntary servitude except as a punishment for crime, it is in violation of the Constitution to inflict labor penalties on conviction of persons charged with misdemeanors. In 12 Cyc., 129, it is said: "A crime is an act or omission which is prohibited by law, as injurious to the public, and punished by the State in a proceeding in its own name or in the name of the people." In a note on the same page the following appears: "The term 'criminal,' when used in reference to judicial proceedings, is opposed to 'civil,' and, in its most comprehensive meaning, may be regarded as including all cases for the violation of the penal law. (Applegate v. Common-

wealth, 7 B. Mon., 12; Montee v. Commonwealth, 3 J. J. Marsh, 132.)'' And in another note on the same page is found the following from Blackstone: ''A crime or misdemeanor is an act committed or omitted in violation of a public law either forbidding or commanding it. This general definition comprehends both crimes and misdemeanors, which, properly speaking, are mere synonomous terms, though in common usage the word 'crimes' is made to denote such offenses as are of a deeper and more atrocious dye, while smaller faults and omissions of less consequence are comprised under the gentler name of 'misdemeanors' only.'' (4 Bl. Com., 5.) There are numerous other authorities to the same effect. In our opinion, when the thirteenth amendment and our own Constitution to the same effect were adopted, it was understood that the word ''crime'' was to include misdemeanors and all offenses in violation of the penal laws.

For these reasons, the judgment of the lower court must be affirmed.