[No. 6650.  Decided April 27, 1907.]

THE STATE OF WASHINGTON, *on the Relation of Maurice Thompson, Plaintiff*, v. W. H. SNELL, *as Judge, etc., Respondent.*[1]

INSANE PERSONS—COMMITMENT—ACQUITTAL ON GROUND OF INSANITY—STATUTES—APPLICATION. The general statute, Bal. Code, § 2660, providing for inquisitions of insanity, has no application to one acquitted of murder on the ground of insanity; since such case is covered by a special act, Bal. Code, § 6959, requiring the commitment of such person, if dangerous to be at large, which provision is mandatory; and since an insane condition once adjudicated is presumed to continue until the contrary is shown.

STATUTES—REPEAL—REENACTMENT. The repeal in 1873, of an earlier act, is immaterial where the earlier act was reenacted in 1881.

INSANE PERSONS—ACQUITTAL OF CRIME ON GROUND OF INSANITY—IMPRISONMENT—CONSTITUTIONAL LAW—DUE PROCESS OF LAW—PRESUMPTIONS. One accused of murder, who submits a plea of insanity to trial by jury and is found not guilty by reason of insanity, may be committed to prison if found manifestly dangerous, conformably to Bal. Code, § 6959, and is not deprived of his liberty without due

[1]Reported in 89 Pac. 931.

process of law where he does not allege a restoration of sanity; since he was duly accorded a fair trial, and the presumption of insanity once found, continues; and since the law does not prevent a judicial investigation as to restored sanity.

SAME — IMPRISONMENT — PUBLIC POLICY. The commitment to a jail or penitentiary of one acquitted of murder on the ground of insanity, if manifestly dangerous, is not contrary to public policy or the humane spirit of the laws dealing with the insane.

SAME — DANGEROUS CHARACTER — EVIDENCE OF — CONCLUSIVENESS. Acquittal on the ground of insanity is conclusive that defendant is insane, and the fact that defendant killed a man, is conclusive that he is "manifestly dangerous," in the absence of clear evidence that his mental condition has undergone a radical change.

SAME—PRISONS—WHAT CONSTITUTES. Bal. Code, § 6959, providing for the commitment to "prison" of dangerous persons acquitted of crime on the ground of insanity, authorizes commitment to a penitentiary, a county jail, or a hospital.

Application filed in the supreme court February 9, 1907, for a writ of mandate requiring the superior court for Pierce county, Snell, J., to make an examination as to the defendant's sanity after a trial for murder and an acquittal on the ground of insanity; also, for a writ prohibiting the entry of judgment prior to such examination. Writs denied.

*Will H. Thompson,* for relator.

*Kenneth Mackintosh, John F. Miller, Walter M. Harvey,* and *Vance & Mitchell,* for respondent.

Root, J.—Chester Thompson was tried upon a charge of murder for the killing of George Meade Emory. A verdict of "not guilty on the ground of insanity" was returned. Before any judgment was entered upon this verdict, the relator, Maurice Thompson, brother of Chester, filed in the superior court a complaint as follows (omitting formal parts):

"Maurice Thompson, being duly sworn, on oath says, there is in said county an insane person, whose name is Chester Thompson, who, by reason of insanity, is unsafe to be at large (or is suffering under mental derangement), and affiant therefore asks that said person be arrested and taken before

the superior judge or county commissioners, within said county or district, for examination."

Thereupon the defendant joined in the request that an examination be had as to his sanity or insanity, and demanded a jury to determine the question. He did not, however, allege that he had recovered his sanity, or that he was sane at that time. The prosecuting attorney, by motion and by a "supplemental information," sought to have the trial court enter judgment upon the verdict in accordance with Bal. Code, § 6959 (P. C. § 2208). The court having intimated that it would do so, the relator, Maurice Thompson, applies to this court for an alternative writ of mandate to require that court to have an examination under the provisions of Bal. Code, § 2660 (P. C. § 5546); and the defendant Chester Thompson applies for a writ prohibiting that court from taking any proceedings upon said verdict prior to a hearing upon the question of his sanity or insanity, upon the complaint made and filed by his brother as aforesaid. At the time of the argument here, we made an order directing that the trial court take no further proceedings in the case until the further orders of this court.

Relator contends that the defendant Thompson is entitled to an examination touching the question of sanity or insanity, under the provisions of Bal. Code § 2660. That section reads as follows:

"The superior court of any county in this state, or the judge thereof, upon the application of any person under oath, setting forth that any person, by reason of insanity, is unsafe to be at large, shall cause such person to be brought before him, and he shall summon to appear at the same time and place, two or more witnesses, who shall testify, under oath, as to conversation, manners and general conduct upon which said charge of insanity is based; and shall also cause to appear before him, at the same time and place, two reputable physicians, before whom the judge shall examine the charge, unless the accused, or any one in his or her behalf, shall demand a jury to decide upon the question of insanity.

If such demand be made, the trial shall be by jury. If no jury be demanded, and the said physicians, after a careful hearing of the case, and a personal examination of the alleged insane person, shall certify under oath that the person examined is insane, and the case is of a recent or curable character, or that the said insane person is of a homicidal, suicidal, or incendiary disposition, or that from any other violent symptoms the said insane person would be dangerous to his or her own life, or the lives and property of the community in which he or she may live; and if said physicians shall also certify to the name, age, nativity, residence, occupation, length of time in this state, state last from, previous habits, premonitory symptoms, apparent cause, and class of insanity, duration of the disease, and present condition, as nearly as can be ascertained by inquiry and examination; and if the judge shall be satisfied that the facts revealed in the examination establish the existence of the insanity of the person accused, and that it is of a recent or curable nature, or of a homicidal, suicidal, or incendiary character, or that from the violence of the symptoms the said insane person would be dangerous to his or her own life, or to the lives and property of others, if at large, he shall order such insane person sent to the hospital for the insane. If the trial has been by jury, and the accused declared insane by said jury, and the insanity be of the character above described, the said insane person shall be ordered by the judge to be sent to the hospital for the insane."

In their argument relator's counsel, in speaking of this statute, say: "It covers every conceivable case for the determination of the mental condition of any person in this state. It is a *general* statute, covers all cases," etc. We agree with counsel that it is a *general* statute. It covers all cases not specifically provided for by some other statute. But cases where the defendant has been acquitted of an offense on the ground of insanity, such as the case at bar, are provided for by another statute, Bal. Code, § 6959. It applies specially and solely to such cases. The statute reads as follows:

"When any person indicted or informed against for an offense shall, on trial, be acquitted by reason of insanity, the jury, in giving their verdict of not guilty, shall state that it

was ·given for such cause; and thereupon, if the discharge or going at large of such insane person shall be considered by the court manifestly dangerous·to the peace and safety of the community, the court may order him to be committed to prison, or may give him into the care of his friends, if they shall give bonds, with surety to the satisfaction of the court, conditioned that he shall be well and securely kept, otherwise he shall be discharged."

The case of *State ex rel. Mackintosh v. Superior Court of King County,* 45 Wash. 248, 88 Pac. 207, is cited as author- ·ity for such an examination as relator demands. The question involved in the case at bar was not in the case cited. In that case two women were being held for trial upon a charge of murder. An affidavit alleging that they were insane was filed with the trial court, which thereupon ordered an examination to be made as to their mental condition. They had not been tried for the crime charged, nor had there been theretofore any determination as to their sanity or insanity. This court held the action of the trial court proper, inasmuch as, under our constitution, as well as under the common law, no person can be put on trial for a capital offense while insane.

But the case at bar is entirely different. Here the defendant, in the trial of the criminal charge against him, tendered the defense of insanity, and established it to the satisfaction of the jury. That he was insane at the time of the homicide has been adjudicated at his instance. It having been established that he was insane at that time, such condition is presumed to continue until the contrary is shown. *In re Brown,* 39 Wash. 160, 81 Pac. 552, 109 Am. St. 868; 22 Cyc. 1115. Hence, it is unnecessary to examine relator's charge that defendant is now insane. His insanity is an adjudicated fact in the case. Having been acquitted upon the ground of insanity, § 6959 applies to his case and is mandatory upon the trial judge. Section 2660 has no application to the case.

It is, however, urged by relator that § 6959 was repealed by § 366 of the probate practice act of November 11, 1873. Section 6959 was first enacted by the territorial legislature

in 1854. It was re-enacted in 1881. Hence, it is immaterial as to whether, as first enacted, it was repealed by the probate act of 1873.

It is also urged that said section was enacted because, at that time, there was no hospital for the insane in the then territory. But this would not account for its re-enactment in 1881, when the territory had such a hospital.

It is further suggested that the statute is unconstitutional, as being in conflict with the state constitution and with the thirteenth and fourteenth amendments to the Federal constitution. The constitutionality of the law has heretofore been affirmed by this court. *In re Brown, supra.*

Finally, it is strenuously urged that, to give this statute effect, is to nullify the humane spirit running all through our laws having to do with those unfortunates who are overtaken by insanity; that it is an anomaly to say that one on trial for murder or one convicted thereof may be examined for insanity, while one acquitted upon the ground of insanity may not have such examination; that the imprisonment of an insane person in a penitentiary or jail is a treatment so drastic as to be inconsistent with our other statutes and general policy of dealing with the insane.

When we remember that there are different types of insanity, and when we reflect that the purpose of caring for the insane involves both a regard for them and for the safety of the public, we cannot say that this statute conflicts with any subsequent statute or any principle of sound public policy. Good reasons readily occur in justification of its enactment. There are occasionally defendants acquitted of murder on the ground of insanity who should, and can, be committed to the penitentiary under this statute. A defendant so committed, or otherwise restrained of his liberty, would have the right, upon asserting a recovery of his sanity, to have the question of such recovery determined by the court.

The statute in question authorizes the committing of a defendant to "prison," if the discharge or going at large of

such insane person shall be considered by the court manifestly dangerous to the peace and safety of the community. The question is suggested as to what evidence establishes his "manifestly dangerous" condition. The fact of his having killed a human being is conclusive that he was "dangerous;" and the verdict of the jury, that he was insane at the time of the homicide; and unless there is clear, ample, and conclusive evidence that his mental condition has undergone a radical change toward a normal condition since that time, the trial judge should not hesitate to find him "manifestly dangerous" within the meaning of the statute—unless, of course, his physical condition, by reason of sickness, disease, or otherwise, should have rendered him absolutely incapable of doing violence.

The word "prison," as used in the statute, does not mean merely the penitentiary or a county jail. Webster defines the word "prison" as: "A place where persons are confined, or restrained of personal liberty; hence, a place or state of confinement, restraint, or safe custody." The Standard dictionary defines it as follows: "A place of confinement; specially, a public building for the safe-keeping of persons in legal custody," and gives a synonym *inter alia*, "house of detention." The Century dictionary gives this definition: "A place of confinement or involuntary restraint; especially, a public building for the confinement or safe conduct of criminals and others committed by process of law; a jail." We think the word "prison" as used in the statute comprehends the penitentiary, any county jail, and any state hospital for the insane, and that the trial judge may commit to any of these in accordance with the nature of the alleged insanity and the other facts of any given case.

Both applications for writs are denied. The temporary restraining order is dissolved.

HADLEY, C. J., CROW, FULLERTON, and MOUNT, JJ., concur.