## TAYLOR v. GEORGIA.

No. 70. Argued December 15, 16, 1941.—Decided January 12, 1942.

*Messrs. Leonard Haas* and *Thomas Taylor Purdom* for appellant.

*Mr. C. S. Baldwin, Jr.*, with whom *Mr. Ellis Arnall*, Attorney General of Georgia, was on the brief, for appellee.

Opinion of the Court by MR. JUSTICE BYRNES, announced by the CHIEF JUSTICE.

Appellant was indicted in the Superior Court of Wilkinson County, Georgia, for violation of §§ 7408 and 7409, of Title 26 of the Georgia Code. Section 7408 provides:

"Any person who shall contract with another to perform for him services of any kind, with intent to procure money or other thing of value thereby, and not to perform the service contracted for, to the loss and damage of the hirer, or, after having so contracted, shall procure from the hirer money, or other thing of value, with intent not to perform such service, to the loss and damage of the hirer, shall be deemed a common cheat and swindler, and upon conviction shall be punished as for a misdemeanor." [1]

And Section 7409 declares:

---

[1] Section 1065 of the Georgia Penal Code (Ga. Code (1933), Title 27, § 2506) provides: "Except where otherwise provided, every crime

"Satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the services so contracted for, or failure to return the money so advanced with interest thereon at the time said labor was to be performed, without good and sufficient cause, and loss or damage to the hirer, shall be deemed presumptive evidence of the intent referred to in the preceding section." [2]

The indictment alleged that appellant had entered into a contract with R. L. Hardie to perform manual labor for $1.25 a day until he had earned $19.50 at that rate, that he had done so with the intent not to perform the services, that he had thus obtained the $19.50 as an advance, that he had failed without good and sufficient cause to do the work, that he had failed and refused to repay the $19.50, and that loss and damage to Hardie had resulted. Appellant demurred to the indictment, asserting that §§ 7408 and 7409, upon which it was based, were repugnant both to the Thirteenth Amendment and the Act of Congress passed pursuant to it,[3] and to the due process clause of the Fourteenth Amendment. The demurrer was overruled, exception was taken, and the case went to trial.

Hardie was the only witness for the State. He testified that the agreement had been made, that he had advanced the $19.50, that appellant had neither done the work

declared to be a misdemeanor shall be punishable by a fine not to exceed $1,000, imprisonment not to exceed six months, to work in the chain gang on the public roads, or on such other public works as the county or State authorities may employ the chain gang, not to exceed 12 months, any one or more of these punishments in the discretion of the judge . . ."

[2] These two sections were enacted as sections one and two of the Act of August 15, 1903. Ga. Laws (1903) 90.

[3] The Thirteenth Amendment reads: "Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof

nor returned the money, and that although appellant had said something about being sick, he had given no visible sign of it and had not been confined to bed.  Under the statutes of Georgia,[4] appellant could not testify under oath, but he was permitted to make an unsworn statement in which he generally denied that he and Hardie had made the agreement or that Hardie had paid him the $19.50. The trial judge charged the jury in the language of §§ 7408 and 7409.  He refused to instruct the jury that these sections are repugnant to the Thirteenth and Fourteenth Amendments of the Constitution of the United States.

The jury returned a verdict of guilty and judgment of conviction was entered.  Appellant moved for a new trial on the ground that §§ 7408 and 7409 violated provisions of both the federal and state Constitutions, and the motion was denied.  On appeal, the conviction was affirmed by the Supreme Court of Georgia.  191 Ga. 682, 13 S. E. 2d 647.

---

the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

"Section 2. Congress shall have power to enforce this Article by appropriate legislation."

U. S. C., Title 8, § 56, reads: "The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of any Territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void."

U. S. C., Title 18, § 444, reads: "Whoever holds, arrests, returns, or causes to be held, arrested, or returned, or in any manner aids in the arrest or return of any person to a condition of peonage, shall be fined not more than $5,000, or imprisoned not more than five years, or both."

[4] Georgia Code (1933), Title 38, §§ 415, 416.

We think the conviction must be reversed. There is no material distinction between the Georgia statutes challenged here and the Alabama statute which was held to violate the Thirteenth Amendment in *Bailey* v. *Alabama,* 219 U. S. 219.[5] It is argued here, just as it was in the *Bailey* case, that the purpose of § 7408 is nothing more than the punishment of a species of fraud, namely, the obtaining of money by a promise to perform services with intent never to perform them. And the presumption created by § 7409 is said to be merely a rule of evidence for the trial of cases arising under § 7408. Actually, however, § 7409 embodies a substantive prohibition which squarely contravenes the Thirteenth Amendment and the Act of Congress of March 2, 1867.[6] Its effect is to authorize the jury to convict upon proof that an agreement has been reached, that money has been advanced on the strength of it, that the money has not been returned, that the appellant has failed or refused to perform the services "without good and sufficient cause," and nothing more. The necessary consequence is that one who has received an advance on a contract for services which he is unable to repay is bound by the threat of penal sanction to remain at his employment until the debt has been discharged. Such coerced labor is peonage. And it is no less so because a presumed initial fraud rather than a subsequent breach of the employment contract is the asserted target of the statute. It is of course clear that peonage is a form of involuntary servitude within the meaning of the Thirteenth Amendment and that the Act of 1867 is an "appropriate" implementation of that Amendment. *Clyatt* v. *United States,* 197 U. S. 207.

We are told that the manner in which these sections have been interpreted by the courts of Georgia rescues

---

[5] And cf. *State* v. *Oliva,* 144 La. 51, 80 So. 195; *Ex parte Hollman,* 79 S. C. 9, 60 S. E. 19.

[6] See note 3, *supra.*

them from invalidity. It is urged that the phrase "without good and sufficient cause," which appears in § 7409, in effect requires proof of fraudulent intent at the time of making the contract and obtaining the money. But this argument is wide of the mark. The words "without good and sufficient cause" plainly refer to the failure to perform the services or to return the money advanced. Since the subsequent breach of the contract by the defendant, however capricious or reprehensible, does not establish a fraudulent intent at the initial stage of the transaction, the content which has been assigned to the phrase "without good and sufficient cause" by the Georgia courts is immaterial. See *Bailey* v. *Alabama,* 219 U. S. at 233–234.

Moreover, as the Court observed in the *Bailey* case, "the controlling construction of the statute is the affirmance of this judgment of conviction." 219 U. S. at 235. The most that the jury could have found in the evidence here was proof that the contract had been made, that $19.50 had been advanced, that the appellant had failed to do the work or to return the money, and perhaps that this failure had been "without good and sufficient cause." The presumption created by § 7409 was thus essential to the conviction.

It is true that it appears from the record that the Supreme Court of Georgia regarded it as unnecessary to determine the sufficiency of the evidence to support the verdict because "the defendant relies solely on constitutional grounds." And it is also true that it appears from the record that in his brief in that court the appellant stated: "Inasmuch as the defendant in seeking to set aside his conviction relies solely on constitutional grounds, the evidence set out in the record is material only in so far as it relates to these grounds." However, the only possible construction of this statement, in the light of appellant's consistent attack upon the presumption created by § 7409,

is that appellant agreed to waive any contention that the evidence was insufficient to establish the factors declared by that section to warrant the presumption of an initial intent to defraud. He cannot fairly be said to have conceded more. Consequently, the Georgia Supreme Court could not escape the necessity of passing upon the validity of the presumption raised by § 7409 in order to sustain the conviction.

We are aware that in *Wilson* v. *State,* 138 Ga. 489, 75 S. E. 619, the Supreme Court of Georgia held that *Bailey* v. *Alabama* does not require the invalidation of these sections. Its error in so doing arose from a misconception of the scope of the *Bailey* decision. To be sure, a judicially created rule in Alabama denied to a defendant the opportunity to make any kind of statement as to his uncommunicated motives, and this circumstance drew the notice of the Court. 219 U. S. at 228, 236. In Georgia, on the other hand, a defendant is permitted to make an unsworn statement if he chooses. But the opinion in the *Bailey* case leaves no doubt that this factor was far from controlling and that its effect was simply to accentuate the harshness of an otherwise invalid statute.

We think that the sections of the Georgia Code upon which this conviction rests are repugnant to the Thirteenth Amendment and to the Act of 1867, and that the conviction must therefore be reversed.

*Reversed.*

MR. JUSTICE ROBERTS took no part in the decision of this case.