## 1907. COLEMAN v. THE STATE.

1. On the trial of an accusation under the "labor-contract act" of 1903 (Acts 1903, p. 90), it is for the jury, and not for the court, to determine, from the evidence, whether the presumption that there was an intent to defraud, arising from the failure to perform the services, is rebutted by the showing of a good and sufficient cause why the labor was not performed, or the money advanced not returned.

2. Consequently, in a case in which the defendant had been beaten by the prosecutor and thereafter had left his employment, it was error to instruct the jury that, "if the defendant provoked the difficulty by using opprobrious language to the prosecutor, such as would justify the assault, and as a result the prosecutor beat him, that would not be a legal excuse for failure to carry out the contract by the defendant." Regardless of the merits of the quarrel between the employer and the employee, and no matter who might be the aggressor, if the defendant left the service of his employer on account of the beating or the difficulty, and not on account of a preconceived fraudulent intent which had no connection with such difficulty, he would not be guilty of a violation of the "labor-contract act."

3. As a note is not payment until it is itself paid (unless an express agreement by the payee to receive it as payment is shown), the giving of a note by an employer, by which he promises at a future date to pay the amount of a pre-existing debt of an employee, is not an advance of the amount therein specified, within the terms of the statute of 1903, supra.

4. One who agrees to furnish or pay for labor for the benefit of another is a contractor, and not a servant or laborer within the terms of the "labor-contract act" of 1903. *Johnson* v. *State*, 125 *Ga.* 243 (54 S. E. 184).

5. "Before a prosecution can be successfully maintained under this act, the burden is upon the State to show that loss or damage was actually sustained by the hirer. Where it appears that advances were made and that the person to whom the advances were made performed a certain amount of service, but the value of such service is not made to appear, the prosecution fails to carry this burden of proof." *Abrams* v. *State*, 126 *Ga.* 591 (55 S. E. 497).

Accusation of misdemeanor, from city court of Camilla—Judge Scaife. April 9, 1909.

Submitted June 9,—Decided June 29, 1909.

*A. S. Johnson,* for plaintiff in error.

*Sam. S. Bennet, solicitor,* contra.

RUSSELL, J. The plaintiff in error was convicted of a violation of the "labor-contract law" of 1903 (Acts of 1903, p. 90), and excepts to the judgment overruling his motion for new trial. It is unnecessary to discuss all of the exceptions, but, for reasons which we shall state, we are clearly of the opinion that the movant should have been given a new trial.

1. In charging the jury upon what might be good reason for failure to perform labor which a servant or laborer might have contracted to perform, the court erred by invading the province of the jury. Upon this subject the court's charge was as follows: "I charge you that if the prosecutor raised a difficulty with the defendant without provocation, and beat him, that would be a sufficient cause for a failure to comply with the contract; but on the other hand, if the defendant provoked the difficulty by using opprobrious language to the prosecutor, such as would justify the assault, and as a result the prosecutor beat him, that would not be a legal excuse for a failure to carry out the contract by the defendant." It appears, from the evidence, that there had been a difficulty between the parties to the contract; and, while there was a difference as to who was the aggressor, there was no dispute that this difficulty was the cause of the servant's quitting the employ of his hirer. Regardless of the language used by the judge, the instruction, as a whole, was error, because it is for the jury and not for the court to determine whether the excuse for quitting the service of his employer, which may be offered by the employee, is sufficiently valid to rebut the presumption that the contract was made and advances obtained thereupon with fraudulent intent. The second section of the act of 1903 (Acts of 1903, p. 90) provides that "satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the services so contracted for, or failure to return the money so advanced with interest thereon at the time said labor was to be performed, without good and sufficient cause, and loss and damage to the hirer, shall be deemed presumptive evidence of the intent referred to in the preceding section." The intent referred to in the preceding section is an intent to procure money or other thing of value by reason of the contract made, and not to perform the services contracted for. Each of the things stated in the second section of the act, and all of them as stated, are essential ingredients of the offense; and, of course, in every criminal case it is for the jury, and for the jury alone, to determine whether any one or all of the essential ingredients of a crime have been proved. For this reason, as much as the court would be permitted to say upon this subject would be to tell the jury that it was for them to determine whether the presumptive evidence of fraudulent intent had been

rebutted by reason of the fact that the defendant had shown good and sufficient cause for his failure to perform his contract.

2. For an equally good reason the charge of the court upon this subject was error. If the jury believed (and as to this point both the State and the defendant concurred) that the defendant abandonded his contract on account of a beating which he received at the hands of the prosecutor, and solely on this account, it could make no difference who was the aggressor, and the jury would have been authorized to find, regardless of who was the aggressor, that there was no fraudulent intent at the time that the contract was entered into, or at the time that the advances were made by the employer and received by the defendant, and that if such an intention was formed at all, it had its birth after the contract and the advances. As held by Judge Cobb, in *Sterling* v. *State,* 126 *Ga.* 92 (54 S. E. 921), "the gravaman of the offense defined by the act of 1903 (Acts 1903, p. 90), declaring it illegal for any person to procure money or other thing of value on a contract to perform services, with intent to defraud, is the fraudulent intent which exists at the time of the advance, not to perform the services contracted for. *Lamar* v. *State,* 120 *Ga.* 312 (47 S. E. 958). When, in a prosecution under the act above referred to, it appears from the evidence that a contract for services was made, and money and other things of value were advanced to the servant, who went to work under the contract, and thereafter a disagreement arose between the employer and the servant as to the character of the work embraced in the contract, and, as a result of this disagreement, a quarrel arose between them, and the servant left the employer on account of threats of violence made by the employer, the presumption arising under the act, that he procured the goods with fraudulent intent, was overcome, and a verdict finding the defendant guilty was unauthorized." The facts in the *Sterling* case differ somewhat from those in the case at bar, but the same controlling principle must be applied; for if the servant in the present case left because of anger at what he deemed an unjustifiable beating or because he feared he might be again beaten, the presumption that he had entertained a previous intent to defraud at the time the advances were made would be as well rebutted as if he had left, as in the *Sterling* case, on account of a disagreement as to the details of the contract and on account of the threats of

his employer. The principle referred to by the trial judge is sound law as applied to a case of assault and battery, but it must always be borne in mind that the constitutionality of the act of 1903 can only be upheld by denying to the act any degree of potentiality in effecting the collection of a debt, and by strictly refusing to attribute to the General Assembly any semblance of an intention in that direction. The whole intention of the act is to punish a species of cheating and swindling; and the intent to cheat and defraud must exist at the time, and not arise after, the advances are made; and no presumption that there was such an antecedent intention can continue and support a conviction if the evidence in the case rebuts it.

3. Exception is taken to the following charge of the court: "In reference to the item of $94.31, alleged to have been advanced by the prosecutor to G. W. Jackson on January 1, 1909, by request of defendant, I charge you that if the prosecutor gave his promissory note to said G. W. Jackson by request of defendant, it would make no difference, so far as this prosecution is concerned, whether the note had been in fact paid or not. The giving of the note by Jackson by request of defendant would constitute an advance of the amount of the note." Under §3720 of the Civil Code, "bank-checks and promissory ·notes are not payment until themselves paid;" and for this reason we are of the opinion that the charge above quoted was error. It is true that the Supreme Court, in *Holton* v. *State,* 109 *Ga.* 127 (34 S. E. 358), held that "If by deceitful means or artful practices one is induced to give to another his negotiable note promising to pay a given sum at a named date, whether as a matter of fact the maker is or is not insolvent, he is nevertheless defrauded and cheated." That ruling, however, was based upon the fact that as, upon one's promise to pay, a judgment may be rendered carrying with it a lien on all his property, the note, though valueless at the time may prospectively be counted as a thing of value; and a number of cases are cited in which even insolvent notes are held to be articles of value. Criminal laws, however, are to be construed strictly, and the holding that a note is an article of value does not carry with it the idea that the giving of a note is a payment such as constitutes an advance, within the terms of the act of 1903. All of the decisions of the Supreme Court, so far as our investigation has reached, have

uniformly held that the giving of a note by A to B for a debt of C is not payment of C's debt, unless the note is expressly so accepted by B. The debtor must not only request that the note be given, but the creditor must accept the note. Upon this subject see *Stewart Paper Mfg. Co.* v. *Rau,* 92 *Ga.* 511 (17 S. E. 748) ; *Kirkland* v. *Dryfus,* 103 *Ga.* 127 (29 S. E. 612) ; *Brantley Co.* v. *Lee,* 109 *Ga.* 479 (34 S. E. 574) ; *Butts* v. *Cuthbertson,* 6 *Ga.* 166; *Weaver* v. *Nixon,* 69 *Ga.* 699; *Keller* v. *Singleton,* 69 *Ga.* 704; *Norton* v. *Paragon Oil Can Co.,* 98 *Ga.* 470 (25 S. E. 501) ; *Pritchard* v. *Smith,* 77 *Ga.* 463. In the *Weaver* case, supra, it was expressly held, that "A bill, acceptance, or promissory note, either of the debtor or of a third person, is no payment or extinguishment of the original demand, unless it is *expressly agreed* to receive it as payment." As there is no evidence that G. W. Jackson had expressly agreed to receive the prosecutor's note in extinguishment of the defendant's debt, there was, under the decisions above cited, no payment of the defendant's original debt; and, of course, if there was not sufficient evidence of payment, there was no advance as to this item, and, consequently, no evidence to authorize the charge to which exception is taken.

4, 5. The principle stated in the fourth headnote, when considered in connection with the fifth, leads us to the conclusion that the verdict was unsupported by evidence, for the reason that the evidence fails to show that the prosecutor sustained any loss. While the prosecutor had made some advances, the employee had performed services of value, and it is not shown that the work actually done by the defendant was not worth as much as the advances received by him. Omitting the item of lost time, as included in the account (which we hardly think could, by any rule, be held to be an advancement), and the note, which for the reasons stated must be excluded from the calculations, the prosecutor advanced to the defendant $18.55, but the defendant, according to the undisputed testimony, had worked for twenty-six days, and the value of the work thus performed by him was not shown to have been less than $18.55. Learned counsel for the State argues that the work could not have been worth over $5. This inference is drawn, no doubt, from the fact that the contract provided, among other things, that the defendant should be paid $6 per month. But this was not all that the contract included, and the burden was not upon the de-

fendant to show that he had not occasioned loss, but the burden was upon the State to show that the prosecutor had actually suffered loss. The contract provided that the defendant was to be provided with seven pounds of meat and a half bushel of meal, as well as the $6, and there was no evidence that this was furnished, or what was its value if not furnished; and it appears, by the items of the account, that the meat furnished was charged thereupon at twenty cents a pound, and one item appears to have been furnished after the defendant left. Furthermore, the State did not prove that the defendant did not furnish labor of value upon the seventeen acres of ground he was to cultivate, which would offset the loss; and it must be borne in mind that $4 of the $18.55 was advanced four days after the defendant had left his employer, and, therefore, can not be said to have been advanced upon the faith of the contract, or by reason of the fact that the defendant was in his employ. It must be shown that there is a loss to the employer, in order to successfully maintain a prosecution for a violation of the act of 1903. The burden of showing this is upon the State, and in the present case we think the prosecution failed to carry that burden.                    *Judgment reversed.*