## 2104. HANKINSON *v.* THE STATE

1. "In order to sustain a conviction under the 'labor-contract act' of 1903, it must appear that the accused contracted to perform the labor or services himself, not merely to furnish the labor, and that he has, without sufficient cause, failed and refused to carry out his contract," and that the laborer's failure to perform his contract resulted in actual loss and damage to the hirer.

2. Before the act of 1903, commonly called the "labor-contract act," can be violated, the evidence must clearly show that there existed in the mind of the laborer a fraudulent intent when he obtained the advance of money or property on his contract or promise to perform services.

Accusation of misdemeanor, from city court of Waynesboro—Judge Davis. July 22, 1909.

Submitted October 6,—Decided October 13, 1909.

*Phil. P. Johnston, J. H. Porter,* for plaintiff in error.

*F. S. Burney, solicitor,* contra.

HILL, C. J. Hattie Hankinson was convicted of violating what is commonly known as the "labor-contract law" (Acts 1903, p. 90). Her motion for a new trial, based alone on the general grounds, was overruled, and she brings error. The accusation, so far as material, charges that the defendant "on the 15th day of February, 1909, after having entered into a contract with William Wesley to perform services for him as a cropper for and during the year 1909, did procure from William Wesley on said contract $15 in money, meat of the value of $7.25, meal of the value of $1.86, flour of the value of $2, lard of the value of .95, rice of the value of .65, one pair of shoes of the value of $2.50, having procured said money and articles of value with intent not to perform services so contracted for, and having procured said money and articles of value upon the faith of performing said services, and having failed to perform said services as contracted for with-

out good and sufficient cause, and having failed to return the money so advanced, to the loss and damage of the said William Wesley," etc. The prosecutor, who was the sole witness for the State, testified in substance as follows: On December 12, 1908, the defendant made a contract with him to make a crop on shares during the year 1909 on a rented place. The prosecutor was to furnish the land and stock, feed the stock, and furnish a half of the guano. The defendant was "to furnish the labor and feed the same, and also furnish one half of the guano," and was to have one half of the crops made, except the cottonseed. On the day this contract was made, the prosecutor advanced to the defendant $15 in cash, and she moved on the place with her son and daughter, who were about grown and who were her laborers. The prosecutor on January 9 advanced supplies to her as follows: twenty-seven pounds of meat at $3.75; a half bushel of meal, 65 cents; one sack of flour, $1; two pounds of sugar, 20 cents; one package of baking powder, 10 cents; rice, 25 cents; soap, 25 cents; tobacco, 20 cents; lard, 50 cents; coffee, 5 cents. On February 6 he advanced to her, for one of her hands, one pair of shoes, $2.50; twenty-five pounds of meat, $3.50; one bushel of meal, $1.21; flour, $1; lard, 25 cents; tobacco, 15 cents; rice, 40 cents, and lard, 40 cents. He testified that the whole amount advanced under the contracts was $30.50. The $15 in cash was advanced to the defendant before she moved on the place at the date of her contract, and the provisions were advanced to her as stated. About February 20 she left the place, and came back with a wagon to move her "things," and the prosecutor would not let her move them. She thereupon went off and got a warrant from a justice of the peace to move them, and the justice of the peace, on the trial of the possessory warrant, held in her favor. In the language of the prosecutor, "she left without paying me what she owed me, and has not paid any of it since." The prosecutor advanced nothing on the contract after February 6, 1909. The defendant's son and daughter worked regularly on the place, cleaning and plowing the land until February 20. "They did what I called on them to do. When she came to move her things I told her she could not do so. She said Mr. McElmurray (a white man to whose house she had moved) told her to tell me to come over to see him and let him know what Hattie owed me,

and he would pay it. I never did go to Mr. McElmurray and let him know how much she owed me, or ask him for the money, but I at once took out a warrant for her. After I advanced the last supplies on February 6, they worked on until February 20." He testified that he kept his contract and did not know why the defendant had failed to keep hers. The defendant stated (and in this statement she was corroborated by two witnesses, one of them disinterested apparently), that she was compelled to leave the house of the prosecutor, because he had failed to put it in a tenantable condition as he had promised to do when she made the contract with him, and that she could not live in it, because it leaked so badly whenever it rained, and she told the prosecutor that she could not stay and would be compelled to get another place, unless he had the house fixed, which he failed to do; that she saw "that gentleman over there," Mr. McElmurray, and told him about it, and he agreed to give her a house, and promised to pay for her any indebtedness to the prosecutor, and told her to tell the prosecutor, when she went over there to get her things, to come over to his house and let him know what she owed him, and he would pay it, and she so told the prosecutor.

This case is an exception to the general rule. Generally, in alleged violations of this "labor-contract law," the prosecutor is a white man and the defendant a black man or woman. It does not, however, differ from the majority of these cases, in that the facts fail to show any violation of the statute. In the first place, there was no evidence to show that the accused, under the alleged contract, was to perform any services or labor herself. According to the prosecutor, she contracted to make a crop for him on shares during the year 1909. He was to furnish the land and stock and one half the guano, and to feed the stock, and she was to furnish the labor and one half the guano and to feed the labor, and the crops were to be divided between them equally, except the cotton-seed. There was nothing in the contract or in the evidence to show that she herself was to do the work; according to the evidence she was simply to furnish the labor, and therefore she was not, strictly speaking, a laborer, but a contractor or cropper; and therefore she did not fall "within the scope of the act under which the accusation was framed." See *Johnson* v. *State,* 125 *Ga.* 243 (54 S. E. 184), an analogous case where the exact point

is decided; also *Jackson* v. *State,* 4 *Ga. App.* 461 (61 S. E. 862). We think also that the evidence of the prosecutor himself utterly failed to show that the defendant had any fraudulent intent when she obtained from the prosecutor the advance of $15 in cash and the provisions mentioned. She obtained from the prosecutor the $15 in cash on the 12th of December, when the contract was made and she moved into his house. Certainly it can not be said that when she obtained this money she fraudulently intended to abandon her contract. If she did, she abandoned such intention, for, according to the evidence, she faithfully performed her contract, and the laborers whom she had furnished thereunder worked until February 20. This court takes occasion here to emphasize what it has expressly ruled in the *Mulkey* case, 1 *Ga. App.* 525 (57 S. E. 722), that in order to constitute this crime, the fraudulent intent must be in the mind when the money or thing of value is obtained. "This fraudulent intent must be clearly shown before there can be a lawful conviction under this statute." *Patterson* v. *State,* 1 *Ga. App.* 785 (58 S. E. 284). The alleged fraudulent intention in this case is too widely separated from the alleged fraudulent act to prove a violation of this statute. The same statement is applicable to the advance of provisions on January 9 and February 6. On January 9, when the first provisions were advanced, the accused continued to perform her contract, and her laborers continued to work the prosecutor's land; and on February 6, when the remainder of the provisions were advanced, she continued to perform her contract until February 20, and her laborers continued to do whatever the prosecutor called on them to do. Generally speaking, where a laborer abandons his contract before complete performance, he is not entitled to any credit for the part performed, but under the statute upon which this accusation is framed, it must be shown that the hirer suffered actual loss or damage from the act of the laborer in abandoning his contract. We do not think that the evidence in this case shows that the hirer suffered any loss or damage. It is true he states his conclusion that they (meaning the accused and her two laborers) did not work enough before she left the place to repay the cash and provisions advanced. This mere assertion of the prosecutor is hardly sufficient to overcome the undisputed evidence that the defendant and the two laborers

furnished by her performed work on the prosecutor's place for nearly two months. It would seem that the $15 which he advanced, to move her in the beginning of the contract, and the $15 in provisions which he advanced to her and her laborers for the two months, were substantially paid for by her. Another fact which is significant on the question of fraudulent intent is the uncontroverted evidence that when the accused moved off the place and came back for her things, she informed the prosecutor that the "white gentleman" to whose place she intended to move had authorized her to tell him that whatever she owed him he would pay, if he would come to his house and let him know what it was. The prosecutor, according to his own testimony, did not go for his money, but immediately went for a warrant to arrest the defendant for a violation of her contract.

It is unnecessary to consider the question whether the defendant had a good and sufficient cause to leave the prosecutor's place. The testimony in her behalf shows that she had. This the prosecutor denied, and the issue was decided against the defendant, but there can be no question under the evidence in this case, even in behalf of the State, that the essential element of fraudulent intent on the part of the defendant when she received from the prosecutor the advance of $15, as well as the advances of provisions, was not proved, and that her conviction was therefore unauthorized. We therefore reverse the judgment refusing to grant her a new trial.

*Judgment reversed.*