## 74941. HOLT v. THE STATE.
(362 SE2d 464)

POPE, Judge.

Charles Will Holt brings this appeal from his conviction and sentence of theft by deception, OCGA § 16-8-3. *Held*:

1. "Where the appellee in this court points out no material inaccuracy or incompleteness of statement in appellant's brief, and makes no additional statement and cites no additional parts of the transcript, he will be held to have consented to a decision on appellant's statement of the case; and this court will accept appellant's statement as prima facie true and decide the case on the basis of this statement and the evidence cited and quoted in support thereof." *Cincinnati, N. O. &c. R. Co. v. Hilley,* 121 Ga. App. 196 (1) (173 SE2d 242) (1970); *Colson v. State,* 138 Ga. App. 366 (1) (226 SE2d 154) (1976); Court of Appeals Rule 15 (b) (1). See generally *Wilkie v. State,* 153 Ga. App. 609 (1) (266 SE2d 289) (1980). The State, appellee herein, having made no statement of facts beyond a one-sentence assertion that appellant "contracted to do certain work when from past experience he knew that he could not perform those services for that money," we accept appellant's statement of facts as prima facie true and decide the case on the basis of that statement and the evidence cited and quoted.

The alleged victim testified that in September of 1983 she and appellant entered into an agreement whereby appellant was to have 90 days in which to renovate a house owned by her, "to reconstruct the inside of the house, to put cabinets in the kitchen, to fix the roof [and] to paint the outside of the house." No written agreement was tendered as evidence. On five separate occasions between September 1, 1983 and February 22, 1984 the alleged victim gave appellant five checks totaling $14,000. Appellant began the work in September 1983, and the alleged victim stated that "it started off real good." She testified: "I would go by and look at the house or . . . Mr. Holt would call me up and tell me about the progress of the house. . . . Then he ran into a problem [in that] drywall or sheetrock . . . was not available." Progress on the project was "very slow," but the alleged victim continued to observe appellant and others working on the premises between September and December of 1983. The project was not completed within the 90-day time period, and the alleged victim, being

dissatisfied with appellant's work, decided to dispense with appellant's services sometime after February of 1984.

A contractor hired by the alleged victim in September 1984 to complete the renovations testified that the plumbing repairs had been started and the electrical work was about 60 percent completed. The sheetrock had been installed, but required some finishing and painting, "so all [the contractor] had to do was get new doors to put in." The exterior siding "was put on bottom side upwards," but the contractor "worked it out." All the windows were in. Although the contractor had not been shown the agreement between appellant and the alleged victim, he described the work completed on the house "on a scale from 1 to 10, about 2 percent had been [done]."

A code enforcement officer for the city bureau of buildings inspected the property at appellant's request on June 7, 1984. He testified: "[A]t that time the complete project was in [progress.] All of the work was going on. There had been a lot of work . . . done on the particular project. . . . A lot of the work had been almost completed [and was] in progress being done. . . ." The roof was in need of some repair, but he described the work completed as "significant."

Appellant himself testified that he had contracted with the alleged victim to renovate the subject house for $12,000. He stated that he had completed much of the work and at all times attempted to complete the project, but the alleged victim ordered him off the job in the early summer of 1984. He testified that to his knowledge there was no money left due and owing to the alleged victim.

Finally, the evidence showed that the alleged victim filed a breach of contract action in January 1986 against appellant and obtained a judgment by default in the amount of $16,500. She has been unable to collect that judgment. Appellant was subsequently indicted in this case in September of 1986. The State presented evidence at trial of three purportedly "similar transactions" which resulted in appellant's pleading guilty to theft by taking charges in 1984 and 1985.

As is pertinent to this case, OCGA § 16-8-3 provides: "(a) A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property. (b) A person deceives if he intentionally: . . . (5) Promises performance of services which he does not intend to perform or knows will not be performed. Evidence of failure to perform standing alone shall not be sufficient to authorize a conviction under this subsection." "The purpose of this law is not to enforce the contract to perform services, but to punish the fraudulent procurement of money, or other thing of value under the contract. Because of the nature of this law, and lest it be abused, the courts have been strict in requiring the State to allege and prove those things which, under the statute, are necessary for a conviction. To make a

prima facie case the State must prove, among other things, a definite contract; that the defendant failed to perform the services so contracted for, without good and sufficient cause; and that he failed to return the money so advanced . . . , without good and sufficient cause, and all to the loss and damage to the hirer. Mere proof that the defendant failed to carry out the contract does not give rise to a presumption that he did so without good and sufficient cause, nor is such essential element supplied by statements of the hirer that he knew of no good reason why the laborer did not comply with the contract." (Citations and punctuation omitted.) *Banton v. State*, 57 Ga. App. 173, 174 (194 SE 827) (1938). Furthermore, "[b]efore a prosecution can be successfully maintained under this act, the burden is upon the State to show that loss or damage was actually sustained by the hirer. Where it appears that advances were made and that the person to whom the advances were made performed a certain amount of service, but the value of such service is not made to appear, the prosecution fails to carry this burden of proof." *Abrams v. State*, 126 Ga. 591 (2) (55 SE 497) (1906).

Applying the foregoing principles of law to the facts in this case, we are unable to conclude that the State carried its burden of proof. There is no evidence that the service rendered by appellant was of less value than the advances made to him by the alleged victim. *Abrams*, supra. Further, we are unable to find that any rational trier of fact could have found beyond a reasonable doubt that the evidence disclosed an intent to defraud on the part of appellant at the time the advances were obtained. See, e.g., *Clements v. State*, 39 Ga. App. 554 (147 SE 792) (1929); *Raffield v. State*, 7 Ga. App. 422 (3) (67 SE 109) (1910); *Hankinson v. State*, 6 Ga. App. 793 (2) (65 SE 837) (1909). Accordingly, the trial court erred in denying appellant's motion for new trial.

2. In light of our holding in Division 1, supra, we need not address appellant's remaining enumerations of error.

*Judgment reversed. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED OCTOBER 28, 1987.

*Thomas L. Washburn III*, for appellant.

*Lewis R. Slaton, District Attorney, John M. Turner, Jr., Joseph J. Drolet, Benjamin H. Oehlert III, Assistant District Attorneys*, for appellee.