## A07A0442. CAMPBELL v. THE STATE.
### (648 SE2d 684)

PHIPPS, Judge.

After a bench trial, Lori Campbell was convicted of theft by deception based upon a promise to provide brokerage services. Campbell appeals, challenging among other things the sufficiency of the evidence against her. We agree that the evidence at trial did not show a prima facie case of theft by deception. Accordingly, we reverse.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence."[1] Viewed in this light, the evidence showed that in late July and early August 2002, in response to a newspaper advertisement, Valerie Price discussed the lease and eventual purchase of a house with a woman who represented herself as Corenthia Davis. Davis indicated that she was a real estate agent handling the sale of the house on behalf of the property's owner, Laura Campbell. Price and Davis met three times. On July 31, 2002, Davis showed Price the house, and Price gave Davis $40 in cash to run a credit check so that she could pursue the lease/purchase. Price then obtained a money order for $300 payable to Laura Campbell for a good faith deposit, which she gave to Davis on August 1, 2002.

On Friday, August 2, 2002, Davis called Price to let her know that her credit had been approved. Later that day, the two women met again, and Price gave Davis $675 in cash as the balance of a month's rent on the lease/purchase. At this meeting, Davis signed the name "Laura Campbell" to a document reflecting that Price had paid a $975 deposit and that the monthly rental for the house would be $975. Price understood that the house's owner would make some small repairs to the house and that Price and Davis would meet the following Monday to sign a lease agreement and transfer the keys to the house. Davis told Price to call her on Monday at the same number listed in the newspaper advertisement if she "hadn't heard from anyone."

Over the weekend, Price drove by the house and saw a foreclosure sign that had not been there on her earlier visit. Price then tried to call Davis but the telephone number had been disconnected. Price contacted the Georgia Board of Realtors and was told that although "Corenthia Davis" was not a realtor, there was a realtor named "Laura Campbell" who was licensed with a broker named Rita Bailey Bagley and who had come into the Board's offices the previous Friday to put her license on hold. Bagley's real estate agency did not have a listing on the house that Davis had shown to Price.

---

[1] *Martinez v. State*, 278 Ga. App. 500 (629 SE2d 485) (2006) (citation omitted).

Price concluded that the agent who was licensed with Bagley had defrauded her. Price did not meet with Davis or see her again, and she did not go back to the house. Instead she contacted the Douglas County police and accused the agent who was licensed with Bagley of perpetrating a scam.

In fact, the agent who was licensed with Bagley was named "Lori" Campbell, not "Laura" Campbell. Much of the bench trial was devoted to the question of whether appellant Lori Campbell was the same person as "Corenthia Davis" or "Laura Campbell." The trial judge ultimately found Lori Campbell guilty of theft by deception and denied Campbell's various post-trial motions, including her motion for new trial.

1. In her first enumerated error Campbell contends, under a host of different theories, that the evidence was insufficient to support her conviction for theft by deception. "In reviewing a challenge to the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, but only determine whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[2]

Under OCGA § 16-8-3 (a), theft by deception occurs when a person "obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." Deceitful means and artful practices include a person "promis[ing] performance of services which he does not intend to perform or knows will not be performed."[3] To make a prima facie case of theft by deception based on a promise of service, the state must prove, among other things, a definite contract; a failure to perform the contracted-for services without good and sufficient cause; and a failure to return the money advanced under the contract without good and sufficient cause.[4] "Evidence of failure to perform standing alone shall not be sufficient to authorize a conviction. . . ."[5]

Campbell contends that the state failed to demonstrate that she had a definite contract with Price. "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a

---

[2] *Florence v. State*, 282 Ga. App. 31, 32 (1) (637 SE2d 779) (2006) (footnote omitted).

[3] OCGA § 16-8-3 (b) (5).

[4] *Kimble v. State*, 209 Ga. App. 36, 37 (1) (432 SE2d 636) (1993); *Holt v. State*, 184 Ga. App. 664, 665-666 (1) (362 SE2d 464) (1987).

[5] OCGA § 16-8-3 (b) (5).

subject matter upon which the contract can operate."[6] A contract with incomplete terms cannot be enforced.[7] A contract is sufficiently definite, however, "if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves."[8]

The state in this case elected to base its accusation on a promise of brokerage services, rather than on one of the other forms of deception set out in OCGA § 16-8-3 (b). Thus, the state was required at trial to show a definite contract between Price and Campbell for brokerage services.[9] No evidence of a written contract was offered. A broker may enter into a verbal agreement with a customer to provide ministerial acts, such as identifying properties for sale or providing boilerplate sales contracts.[10] From Price's testimony, the services at issue here appear to be arranging for the completion of certain repairs and meeting at a later time to complete a written lease/purchase contract and hand over the keys to the house. We find Price's testimony sufficient to establish what the agent was to do under the agreement for brokerage services.

There is no evidence in the record, however, concerning whether Price agreed to provide the agent any consideration for these services or what that consideration was to be. A contract requires consideration between the parties,[11] and a promise without consideration is unenforceable.[12] Price testified that the $975 she gave the agent was a deposit on the first month's rent on the house. There is nothing in the record to show that any portion of the first month's rent was to go to the agent as consideration for her services.[13]

"[T]he courts have been strict in requiring the State to allege and prove those things which, under the [theft by deception] statute, are

---

[6] OCGA § 13-3-1; *Mitchell Realty Group v. Holt*, 266 Ga. App. 217, 219 (596 SE2d 625) (2004); see also *Cline v. Lee*, 260 Ga. App. 164, 168 (1) (581 SE2d 558) (2003) (requiring for enforceable contract proof of subject matter, consideration, and mutual assent by all parties to contract terms).

[7] *White & Assoc. v. Decker & Hallman, P.C.*, 203 Ga. App. 14, 15 (1) (416 SE2d 352) (1992).

[8] *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 542 (2) (466 SE2d 27) (1995).

[9] "If the indictment [or accusation] sets out the offense as done in a particular way, the proof must show it so, or there will be a variance." *Floyd v. State*, 251 Ga. App. 346, 348 (1) (553 SE2d 658) (2001) (punctuation and footnote omitted).

[10] See OCGA § 10-6A-3 (8); *Killearn Partners v. Southeast Properties*, 279 Ga. 144, 146 (1) (611 SE2d 26) (2005). In contrast, an agreement between a broker and a client for more extensive services requiring the broker's professional judgment and skill must be in writing. See id.

[11] OCGA § 13-3-40 (a).

[12] *Johnson v. Hardwick*, 212 Ga. App. 44, 45 (1) (441 SE2d 450) (1994).

[13] The state did not charge Campbell based on the $40 that Price paid to the agent for a credit check.

necessary for a conviction."[14] To prove the required element of a definite contract for brokerage services between Price and Campbell, the state must show a meeting of the minds as to the consideration received by the agent for her services. The state argues on appeal that it is "common practice and common knowledge" that a buyer's agent normally receives consideration from the seller through a commission, but at trial the state offered no evidence as to this practice either generally or in this particular transaction. Moreover, in *White & Associates v. Decker & Hallman, P.C.*,[15] we declined to infer terms of a brokerage contract from industry standards, instead stating that "not only did appellant fail to adduce evidence regarding the existence and scope of the custom and usage of realty standards, it is well established that where there is no contract, proof of usage will not make one."[16]

Without consideration for brokerage services there can be no brokerage contract, and without a definite brokerage contract there can be no theft by deception based upon a promise of brokerage services. We thus find the evidence insufficient to support Campbell's conviction for theft by deception.

2. In light of our holding in Division 1, we need not address Campbell's remaining enumerated errors.

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JUNE 22, 2007.

*Kirby Clements, Jr.*, for appellant.

*David McDade, District Attorney, James A. Dooley, Assistant District Attorney*, for appellee.

---

[14] *Holt v. State*, supra at 665 (citation and punctuation omitted).
[15] Supra.
[16] Id. at 15 (citations and punctuation omitted).