S12G0548. STRATACOS v. THE STATE.
(748 SE2d 828)

NAHMIAS, Justice.

We granted certiorari to decide whether the Court of Appeals erred in *Stratacos v. State*, 312 Ga. App. 783, 786-787 (720 SE2d 256) (2011), by holding that a felony conviction for theft by deception based

---

on a defendant's failure to fully perform services as promised, see OCGA § 16-8-3 (a) and (b) (5), could stand absent proof of the value of the work actually performed by the defendant. Based on statutory text and precedent that the Court of Appeals overlooked, we conclude that the Court of Appeals did err: Where a defendant is charged under OCGA § 16-8-3 (a) and (b) (5) for deceitfully promising to perform services, the State must prove the value of any services he performed in order to prove that he intended to ultimately deprive the victim of property.

The Court of Appeals also overlooked a second reason that proof of the value of the services the defendant actually performed was necessary in this case: The State sought *felony* punishment for violations of OCGA § 16-8-3 (a) and (b) (5). The statute establishing the penalties for theft offenses sets a monetary threshold for the "property which was the subject of the theft" that makes the crime punishable as a felony rather than a misdemeanor. OCGA § 16-8-12 (a) (1).[1] Thus, if the State seeks only misdemeanor punishment for an OCGA § 16-8-3 (b) (5) violation, it need prove only that the value of the services the defendant actually provided was less than the value of the property he obtained from the victim. In other words, it is necessary to show a shortfall to the victim, but not the particular amount. However, where the State seeks to impose felony punishment for an OCGA § 16-8-3 (b) (5) violation, and thus to increase the maximum statutory penalty for the crime, it must prove that the value of the property the defendant obtained from the victim, less the value of the services he actually performed, exceeded the felony threshold. See *Apprendi v. New Jersey*, 530 U. S. 466, 476 (120 SCt 2348, 147 LE2d 435) (2000).

In this case, appellant Steven George Stratacos has challenged on appeal four of his convictions for felony theft by deception based on his deceitful promises to perform various construction services. Stratacos claims that, on those four counts, the evidence presented at trial showed he provided some services but did not establish the value of those services, and thus the evidence did not support the jury's guilty verdicts. We conclude that the evidence was sufficient to sustain felony convictions under OCGA § 16-8-3 (a) and (b) (5) on three of the

---

[1] When what is now OCGA § 16-8-3 was enacted in 1968, what is now OCGA § 16-8-12 set the threshold amount for a felony theft offense at $100. See Ga. L. 1968, p. 1249, at p. 1295 (effective Apr. 10, 1968). When Stratacos allegedly committed his crimes in 2005 and 2006, the felony threshold was $500. See Ga. L. 1984, p. 900, § 3 (effective Mar. 28, 1984). OCGA § 16-8-12 was amended again in 2012 to increase the felony threshold to "at least $1,500.01 in value." Ga. L. 2012, p. 899, § 3-2 (effective July 1, 2012). When possible, we will refer to the theft amount needed to support a felony conviction simply as the "felony threshold."

counts, but insufficient to sustain even a misdemeanor conviction on Count 8. As to Count 8, the State did not present evidence at trial from which the jury could have determined beyond a reasonable doubt that Stratacos intentionally and ultimately deprived the alleged victim of any amount of property, because the State did not demonstrate that the services Stratacos actually provided were worth less than the amount he was paid under the contract at issue. In sum, the Court of Appeals correctly, albeit for the wrong reason, upheld Stratacos's convictions on Counts 1, 4, and 5 (as well as the six unchallenged counts), but it erred in upholding his conviction on Count 8. We therefore affirm in part and reverse in part the judgment of the Court of Appeals.

1. The evidence at trial, viewed in the light most favorable to the verdicts, showed the following. Between November 2005 and July 2006, Stratacos fleeced nine property owners in Clarke County. Using the name "Steve George," Stratacos drafted and signed ten contracts with nine property owners promising to perform various home and business construction projects. Despite being paid all or part of the contract price up front, Stratacos failed to complete any of the ten jobs — and in four cases he did not even start the work.[2]

On May 5, 2007, Stratacos was indicted on ten counts of theft by deception; the allegations tracked the language of OCGA § 16-8-3 (a) and (b) (5). Nine of the counts alleged that the theft involved a felony amount of property (over $500, see footnote 1 above); one count was charged as a misdemeanor. At trial, the State presented evidence that Stratacos had committed several similar scams in the past.[3] The jury convicted Stratacos on all counts, and the trial court sentenced him as a recidivist under OCGA § 17-10-7 (a) and (c) to a total of 25 years of confinement followed by 25 years on probation.[4] After the trial court denied his motion for new trial, Stratacos appealed.

---

[2] More details about the four jobs at issue on appeal are discussed in Division 4 below.

[3] These included Stratacos's 1999 convictions in Fulton County on two counts of felony theft by taking, his 2003 conviction in Hall County for conversion of payments for real estate improvements, and his January 2005 conviction in Gwinnett County for felony theft by conversion for taking $1,237.50 for a construction job that he never performed.

[4] Specifically, the court sentenced Stratacos to serve a ten-year confinement term on Count 1, ten-year confinement terms concurrent with Count 1 on Counts 3 and 4, and a 12-month confinement term on Count 2 (the one misdemeanor charge) also concurrent with Count 1. The court then sentenced Stratacos to serve a ten-year confinement term on Count 5 consecutive to Count 1, and ten-year confinement terms on Counts 6 and 7 consecutive to Count 1 but concurrent with Count 5. On Count 8, the court sentenced Stratacos to serve ten years on probation consecutive to Count 7; Count 9 added ten years of probation consecutive to Count 8. Finally, on Count 10, Stratacos was sentenced to another five years of consecutive confinement followed by another five years of probation.

In the Court of Appeals, Stratacos argued that the trial court should have granted a directed verdict of not guilty on four of the nine felony counts of theft by deception.[5] See *Stratacos*, 312 Ga. App. at 786. He maintained that the evidence was insufficient on those charges because he partially performed the services promised in those four contracts and "there was no evidence proving the value of the work done as opposed to the value of the advances given to him" by the victims. Id. But the Court of Appeals affirmed all four convictions, ruling that "there was no requirement to prove the value of work done" to convict Stratacos under OCGA § 16-8-3 (a) and (b) (5). Id. We granted certiorari to review that holding.

2. (a) In Georgia, the crime of theft by deceitful promise to perform services traces back to the labor contract act of 1903 ("1903 Act"). See Ga. L. 1903, p. 90. The first section of the 1903 Act defined the elements of, and established misdemeanor punishment for, the crime:

> Any person who shall contract with another to perform for him services of any kind, with intent to procure money or other thing of value thereby, and not to perform the service contracted for, *to the loss and damage of the hirer*, or, after having so contracted, shall procure from the hirer money, or other thing of value, with intent not to perform such service, *to the loss and damage of the hirer*, shall be deemed a common cheat and swindler, and upon conviction shall be punished as for a misdemeanor.

Id. § 1 (emphasis added). Not surprisingly, one of this Court's earliest decisions interpreting the statute held that proof of actual loss to the victim was an essential element of the crime. "Loss by or damage to the person contracted with, and from whom money or other thing of value is procured, is a necessary element in the offense." *Millinder v. State*, 124 Ga. 452, 453 (52 SE 760) (1905). Subsequent decisions of the Court of Appeals did the same. See, e.g., *Banton v. State*, 57 Ga. App. 173, 175-176 (194 SE 827) (1938); *Coleman v. State*, 6 Ga. App. 398, 402-403 (65 SE 46) (1909).

Insisting that the State prove actual loss to the victim was crucial to distinguishing criminal conduct from run-of-the-mill breaches of contracts for services. See *Abrams v. State*, 126 Ga. 591, 593-594 (55

---

[5] Stratacos also disputed the trial court's failure to instruct the jury on his "claim of right" affirmative defense, but the Court of Appeals held that the trial court did not err by declining to give that instruction sua sponte. See *Stratacos*, 312 Ga. App. at 784-786. We declined to grant certiorari on that issue.

SE 497) (1906). See also *Brown v. State*, 8 Ga. App. 211, 211 (68 SE 865) (1910) ("The purpose of the 'labor contract act' of 1903 . . . is not to enforce the contract to perform services, but to punish the fraudulent procurement of money, or other thing of value, under the contract . . . ."). And this Court soon held that, "[w]here it appears that advances were made and that the person to whom the advances were made performed a certain amount of service, but the value of such service is not made to appear, the prosecution fails to carry [its] burden of proof." *Abrams*, 126 Ga. at 591. Otherwise, "[i]t may be that the value of the service rendered was more than the equivalent of the provisions advanced under the contract," and the alleged victim would not have suffered any injury at all. Id. at 594.

This principle was recognized and applied by the Court of Appeals as well. Thus, in *Coleman* the court reversed the defendant's conviction under the 1903 Act where the evidence showed that the victim had paid the defendant $18.55, but the defendant "had worked for twenty-six days, and the value of the work thus performed by him was not shown to have been less than $18.55." 6 Ga. App. at 402. Similarly, in *Banton* the court reversed a conviction under the 1903 Act where "the evidence [did] not clearly show that the [victim] suffered any loss or injury," because the defendant had worked for a day and a half after being advanced only 80 cents "and an inference that the State should have overcome in rebutting the presumption of innocence, was that at the time the advances were made the defendant had done sufficient work under the contract for which he had not been paid to equal in amount the sum advanced." 57 Ga. App. at 175-176.

The 1903 Act had a serious flaw, however. The second section of the statute created an evidentiary presumption of criminal intent if the defendant did not fully perform the contract at issue or refund any advanced payment with interest:

> Satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the services so contracted for, or failure to return the money so advanced with interest thereon at the time said labor was to be performed, without good and sufficient cause, and loss or damage to the hirer, shall be deemed presumptive evidence of the intent referred to in the preceding section.

Ga. L. 1903, p. 90, § 2.

In 1942, the Supreme Court of the United States struck down Georgia's labor contract act as unconstitutional. See *Taylor v. Georgia*, 315 U. S. 25, 31 (62 SCt 415, 86 LE 615) (1942). Because criminal intent was presumed once the prosecution established the basic facts

of an agreement to provide services, an advance payment, the worker's failure to return the money with interest, and the worker's failure to fully perform without good cause, the Court reasoned, the "necessary consequence" was that anyone "who has received an advance on a contract for services which he is unable to repay is bound by the threat of penal sanction to remain at his employment until the debt has been discharged." Id. at 29. "Such coerced labor is peonage," which "is a form of involuntary servitude within the meaning of the Thirteenth Amendment," and "it is no less so because a presumed initial fraud rather than a subsequent breach of the employment contract is the asserted target of the statute." Id. Thus, the Court concluded, the 1903 Act was "repugnant to the Thirteenth Amendment and to the [Anti-Peonage] Act of 1867." Id. at 31.[6]

(b) The crime of theft by deceitful promise to perform services was resurrected in its current form — without the peonage-inducing presumption — when the General Assembly adopted Georgia's then-modern criminal code in 1968. See Ga. L. 1968, p. 1249, at pp. 1290-1291 (now codified as amended as OCGA § 16-8-3 (a) and (b) (5)); Arnold v. State, 210 Ga. App. 843, 848 (437 SE2d 844) (1993) ("OCGA § 16-8-3 evolved from the former cheating and swindling laws . . . ."). Subsection (a) of OCGA § 16-8-3 says that "[a] person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." Subsection (b) then sets forth five forms of the offense. Theft by deceitful promise to perform services is OCGA § 16-8-3 (b) (5), which says that "[a] person deceives if he intentionally . . . [p]romises performance of services which he does not intend to perform or knows will not be performed. Evidence of failure to perform standing alone shall not be sufficient to authorize a conviction under this subsection."[7]

---

[6] Georgia's labor contract act was just one of many Jim Crow statutory schemes that used criminal sanctions, or the threat of criminal sanctions, to coerce African-Americans into providing labor. See generally Douglas A. Blackmon, *Slavery By Another Name: The Re-Enslavement of Black Americans From the Civil War to World War II* (2009).

[7] The other four forms of theft by deception, which are not at issue in this case, occur when the defendant intentionally:

(1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false;

(2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed;

(3) Prevents another from acquiring information pertinent to the disposition of the property involved; [or]

(4) Sells or otherwise transfers or encumbers property intentionally failing to disclose a substantial and valid known lien, adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not a matter of official record . . . .

Although the theft by deception statute does not use the 1903 Act's "loss and damage of the hirer" terminology to require proof of actual loss to the victim, OCGA § 16-8-3 (a) does require proof that the defendant intentionally deprived the victim of property. And in the context of a prosecution under OCGA § 16-8-3 (b) (5) alleging that the defendant deceitfully promised services that he intended not to fully perform, the rationale of *Abrams* and its progeny, and the need for the State to prove the value of the services the defendant *did* render, remains.

To sustain a conviction under OCGA § 16-8-3 (b) (5), the State must do more than simply prove that the defendant obtained property from the victim. The State must prove that the defendant did so through deceitful means and with the intention of ultimately *depriving* the owner of that property. See OCGA § 16-8-3 (a). Where the victim received nothing of value from the defendant in exchange for the money or other property that he gave to the defendant, there is no difference between the property initially obtained from the victim and the property of which the defendant intended to ultimately deprive the victim.

But where the victim has received something of value from the defendant in exchange for his property, as in the case of an alleged violation under OCGA § 16-8-3 (b) (5) for deceitfully promising services that were partially performed, the property the defendant initially obtains from the victim is not the amount of which the defendant intends to ultimately deprive the victim. Instead, the defendant intended to deprive the victim of no more than the difference in value between the services the defendant actually provided and the money the victim paid. For example, if a defendant deceitfully promises to perform $1,000 worth of construction work, the victim pays him the full $1,000 up front, and the defendant actually performs $750 worth of the promised work, the defendant intended to deprive the victim of $250, not the entire $1,000. Put another way, it cannot be said that the defendant criminally deprived the victim of property to the extent that he did what he was paid to do.

Accordingly, in prosecutions under OCGA § 16-8-3 (b) (5), the intent-to-deprive-the-owner-of-property element enunciated in OCGA § 16-8-3 (a) functions like the actual-loss element included in the 1903 Act. The defendant's partial performance of the promised services gives rise to the inference, required by the presumption of innocence,

---

OCGA § 16-8-3 (b) (1)-(4). Subsection (b) (5)'s proviso that, to prove deceptive intent, the State cannot rely solely on "[e]vidence of failure to perform" expressly repudiates the evidentiary presumption that caused the 1903 Act to be struck down in *Taylor*.

that the defendant did not intend to deprive the victim of the property that the victim paid up front. See *Abrams*, 126 Ga. at 594 ("It may be that the value of the service rendered was more than the equivalent of the provisions advanced under the contract."); *Banton*, 57 Ga. App. at 175-176. The State must dispel this inference by proving beyond a reasonable doubt that the value of the services actually provided was less than the value of the property the defendant obtained from the victim. See *Abrams*, 126 Ga. at 591.[8] Requiring the State to prove that the defendant intended to ultimately deprive the victim of some amount of property in order to convict under OCGA § 16-8-3 (a) and (b) (5) also remains important in distinguishing the *crime* of theft by deceitfully promising services from an ordinary contract dispute. See id.[9]

While this Court has not previously addressed this issue in the post-1968 era, the Court of Appeals did in *Holt v. State*, 184 Ga. App. 664 (362 SE2d 464) (1987). The *Holt* court quoted *Abrams*'s admonition that, " '[w]here it appears that advances were made and that the person to whom the advances were made performed a certain amount of service, but the value of such service is not made to appear, the prosecution fails to carry [its] burden of proof.' " Id. at 665 (citation omitted). The court accordingly reversed a conviction under OCGA § 16-8-3 (a) and (b) (5) because "[t]here [was] no evidence that the service rendered by [the defendant] was of less value than the advances made to him by the alleged victim." Id. Thus, *Holt* adopted the correct approach to applying OCGA § 16-8-3 (a) and (b) (5) in cases where the defendant has partially performed the alleged deceitfully promised services.[10]

(c) In addressing Stratacos's argument that the State had not proven "the value of the work done as opposed to the value of the

---

[8] We will not attempt to catalog in this opinion the various types and combinations of evidence that the State may use to prove the value of the services the defendant actually provided, although in Division 4 below we provide some examples of what evidence is sufficient and insufficient when we apply this holding to the four counts that Stratacos has challenged.

[9] Our holding applies only to theft-by-deception charges under OCGA § 16-8-3 (b) (5). We do not consider whether the State must prove a pecuniary loss to the victim to establish other types of OCGA § 16-8-3 violations. Compare, e.g., *Harrell v. State*, 192 Ga. App. 876, 877 (386 SE2d 676) (1989) (holding that OCGA § 16-8-3 contains "no requirement of proof of pecuniary loss" in a case where the defendant purchased an automobile with a fraudulent bank draft).

[10] It is worth noting, however, that *Holt* relied on this portion of *Abrams* without any acknowledgment that *Abrams* was a case interpreting the 1903 labor contract act, the language of which was considerably different than that of OCGA § 16-8-3 (a) and (b) (5). While *Holt* reached the right conclusion on this particular issue, it is always risky for courts to rely on a precedent interpreting a statute or other legal text without first examining whether the legal text on which the precedent was based has been revised and then considering the effect of any such change. For this reason, we do not address today whether *Holt* and other post-1968 Court of Appeals cases have properly relied on other holdings of *Abrams* and similar cases that were

advances given to him," the Court of Appeals relied on two cases applying OCGA § 16-8-3 (a) and (b) (5): *Campbell v. State*, 286 Ga. App. 72 (648 SE2d 684) (2007), and *Kimble v. State*, 209 Ga. App. 36 (432 SE2d 636) (1993). *Stratacos*, 312 Ga. App. at 786. The relied-on portion of these cases recites some of the elements set forth in the 1903 Act, rather than examining the elements set forth in the text of OCGA § 16-8-3 (a) and (b) (5). The *Stratacos* court quoted *Campbell* for the proposition that,

> [t]o make a prima facie case of theft by deception based on a promise of service, the state must prove, among other things, a definite contract; a failure to perform the contracted-for services without good and sufficient cause; and a failure to return the money advanced under the contract without good and sufficient cause.

312 Ga. App. at 786 (quoting *Campbell*, 286 Ga. App. at 73). *Kimble* says the same thing. See 209 Ga. App. at 37. Unfortunately, the cited portion of both cases does not mention a crucial element required to convict a defendant charged under OCGA § 16-8-3 (a) and (b) (5) for an alleged deceitful promise to perform services: the intent to ultimately deprive the owner of some portion of his property. See OCGA § 16-8-3 (a); Division 2 (b) above.[11]

Moreover, both *Campbell* and *Kimble* took their litany of elements from *Holt*. See *Campbell*, 286 Ga. App. at 73 & n. 4 (citing *Holt*, 184 Ga. App. at 665-666); *Kimble*, 209 Ga. App. at 37 (quoting *Holt*, 184 Ga. App. at 665-666). But both cases unfortunately omit the very next passage in *Holt*, which quotes *Abrams* for one of the "other things" that must be proved to convict under OCGA § 16-8-3 (b) (5), namely, that " '[w]here it appears that advances were made and that the person to whom the advances were made performed a certain amount of service, but the value of such service is not made to appear, the prosecution fails to carry [its] burden of proof.' " *Holt*, 184 Ga. App. at 666 (quoting *Abrams*, 126 Ga. at 591). Whether the State had proved the value of the work the defendant actually performed was not the issue raised in *Campbell* or *Kimble*, so their omission of this portion of *Holt* was immaterial there. But it is the issue Stratacos

---

interpreting the text of the 1903 Act. And we add that courts relying on old precedents regarding evidentiary issues should be particularly attuned to this risk in light of Georgia's new Evidence Code.

[11] Nor, for that matter, do *Campbell* and *Kimble* mention the "to the loss and damage of the hirer" element that was enunciated three times in the 1903 Act and noted in *Holt*. See Ga. L. 1903, p. 90, § 1; *Holt*, 184 Ga. App. at 665.

raised in this case, and by overlooking this holding in *Holt* and the rationale of *Abrams* — along with the text of OCGA § 16-8-3 (a) — the Court of Appeals reached the erroneous conclusion that "there [is] no requirement to prove the value of work done" and thus held incorrectly that the State needed to prove only that Stratacos "received money under the terms of the contract, he did not intend to perform all of the contracted services, and he did not return the money." *Stratacos*, 312 Ga. App. at 786-787.

3. The Court of Appeals also erred in failing to recognize that, in a prosecution for violating OCGA § 16-8-3 (a) and (b) (5), proof of the value of the promised services that the defendant actually performed is necessary if the State seeks to punish the violation as a felony under OCGA § 16-8-12 (a) (1).[12] As we just explained in Division 2, in a prosecution under OCGA § 16-8-3 (a) and (b) (5) for theft by deception based on a deceitful promise to perform services, the State must prove (among the other elements of the crime) that the defendant intended to ultimately deprive the victim of at least some of the property that he obtained from the victim. That in turn requires the State either to prove that the defendant did none of the promised work or to prove the value of the work that the defendant did (or did not) perform in order to show that he was paid more than he earned.

If the State is content to have an OCGA § 16-8-3 (b) (5) violation punished as a misdemeanor, then it need prove only that the value of any promised work the defendant performed was less, *by any amount*, than the value of the property he obtained from the victim. See OCGA § 16-8-12 (a) (stating that "[a] person convicted of a violation of Code Sections 16-8-2 through 16-8-9 shall be punished as for a misdemeanor" unless the case comes within one of several listed exceptions providing for greater punishment). However, if the State seeks *felony* punishment, as it did for the four counts at issue in this case, then the State must prove that the value of the property taken exceeded the felony threshold amount. For a theft conviction to be punishable as a felony at the time Stratacos allegedly committed his crimes, for example, the State had to prove that "the property which was the subject of the theft exceeded $500.00 in value." OCGA § 16-8-12 (a) (1) (2005) (providing for punishment of such thefts by imprisonment for one to ten years); Ga. L. 1984, p. 900, § 3.[13] Because proof of that fact — that the property taken by theft was more than

---

[12] This issue did not arise in cases interpreting the 1903 Act, because all violations of that statute were misdemeanors. See Ga. L. 1903, p. 90, § 1.

[13] For trials brought under the current version of OCGA § 16-8-12, the State must prove that the value of the property that was the subject of the theft was at least $1,500.01. See footnote 1 above.

$500—" 'increases the maximum penalty' " for violating OCGA § 16-8-3 (a) and (b) (5), the Constitution requires that fact to be treated as an element of the crime and thus to " 'be charged in [the] indictment, submitted to [the] jury, and proven beyond a reasonable doubt.' " *Apprendi v. New Jersey*, 530 U. S. at 476 (citation omitted). Accord *Terrell v. State*, 276 Ga. 34, 41 (572 SE2d 595) (2002).

As discussed in Division 2, in theft-by-deception prosecutions under OCGA § 16-8-3 (a) and (b) (5), the "property which is the subject of the theft" is the amount of which the defendant intended to ultimately deprive his victim, which is not necessarily the amount that the defendant initially obtained from the victim. The amount of the theft is the difference in value between the services that the defendant actually performed in accordance with his promise and the property he obtained from the victim through deception. Consequently, in cases where the defendant has partially performed the deceitfully promised services, to have the defendant punished for a felony, the State must present evidence that allows the jury to find beyond a reasonable doubt that the difference between the value of the property the defendant initially obtained from the victim and the value of the services he actually provided is greater than the felony threshold set by OCGA § 16-8-12 (a) (1).[14] That means evidence of both the amount of money the victim paid the defendant and the value of the services the defendant performed for that money — or at least evidence that supports a reasonable inference that the difference between the two values exceeds the felony threshold.[15] Otherwise, the State has not met its burden to prove that the defendant intended to and did deprive his victim of a felonious amount of property, and the defendant may be convicted only of a misdemeanor violation of OCGA § 16-8-3 (a) and (b) (5).

4. We now apply these holdings to Stratacos's case. The error he raised at trial and on appeal is the trial court's failure to direct a

---

[14] In cases brought under OCGA § 16-8-3 (a) and (b) (5) where the evidence shows that the defendant did not perform any of the promised services (and that was his intention), the calculation is much simpler. The "property which is the subject of the theft" is the total amount the victim actually paid the defendant. This appears to be the situation in four of the five felony convictions that Stratacos has not challenged on appeal. (In the fifth felony conviction (Count 9), the victim had an itemized contract with Stratacos, and his testimony clearly delineated the amount of money he paid to Stratacos for services that were never performed, which substantially exceeded $500.)

[15] Of course, this showing would not necessarily be dispositive on the amount-of-the-theft issue. If, for instance, evidence shows that the defendant intended to perform more services than he actually provided the victim, but before he could complete the intended performance he was thrown off the job by the victim or arrested by the police, the jury could consider whether that evidence reduces the theft amount below the felony threshold or shows that there was no violation of OCGA § 16-8-3 (a) and (b) (5) at all.

verdict of not guilty on four of the felony counts of the indictment — Counts 1, 4, 5, and 8 — because the State failed to prove the difference in value between the services Stratacos provided and the amount of money he was paid.[16] We review the denial of a directed verdict under the same standard used in evaluating the sufficiency of the evidence to support a criminal conviction: "whether the evidence, viewed in the light most favorable to the verdict, would enable a rational trier of fact to conclude beyond a reasonable doubt that [the defendant] was guilty of the crimes for which he was convicted." *Spiller v. State*, 282 Ga. 351, 355 (647 SE2d 64) (2007). We conclude that the State presented sufficient evidence to sustain felony convictions under OCGA § 16-8-3 (a) and (b) (5) on Counts 1, 4, and 5, but failed to present evidence to sustain even a misdemeanor conviction on Count 8.

(a) As to Count 1, the State presented testimony from the victim that she paid Stratacos a total of $4,137.50 on a $4,437.50 contract to replace 11 windows in her daughter's house.[17] However, Stratacos replaced only seven windows and did not provide materials for, or perform any work on, the remaining four windows. This testimony supports a pro rata calculation of the value of the work that Stratacos performed. Cf. *Banton*, 57 Ga. App. at 175-176 (using the contract's provision that the defendant was to be paid "sixty cents a day" to determine that his work for a day and a half was worth more than the 80-cent advance he received). Since the 11 window replacements were similar, each window replacement was, in essence, a unit of performance under the contract. And since there was a clear division between the seven windows that Stratacos replaced and the four he did not replace, as to which he did no work and supplied no materials, the jury could rationally conclude that Stratacos performed 7/11ths — about 64 percent — of the services he had promised, and thus that he earned about 64 percent, or $2,840, of the $4,437.50 total contract price. Stratacos was paid $4,137.50, so using some basic math, the jury could rationally conclude that Stratacos's underperformance on the contract ultimately deprived, and intended to deprive, the victim of about $1,297.50 ($4,137.50 paid minus $2,840 earned) — well over the $500 felony threshold at the time he violated OCGA § 16-8-3 (a) and (b) (5).

---

[16] The State's proof of other elements of the crimes is not disputed.

[17] At times, the victim described the contract as being for 12 windows, but her testimony makes clear that the written contract, and its total price of $4,437.50, was for 11 windows.

(b) As to Count 4, the State presented testimony that: (1) the victim and Stratacos contracted for him to resurface a flat, 720-square-foot portion of her roof for $2,100 and to install three large skylights in her kitchen for $1,900; (2) the victim paid Stratacos a $2,000 advance, which he was to use, at a minimum, to purchase the flat roofing product and the skylights; (3) Stratacos did not provide any of the roofing product or the skylights, delivering only four two-by-fours and stopping work after cutting the three skylight holes in the kitchen roof; and (4) the victim had to spend an additional $900 to purchase the three skylights and an unspecified amount to purchase the roofing product, as well as pay another contractor an unstated sum to install the skylights and to do the roof work. Because the evidence, when viewed in the light most favorable to the verdict, showed that the $2,000 advance payment was meant to cover the cost of the major materials for the project and the victim had to spend $900 merely to buy the skylights that Stratacos failed to provide, the jury could conclude that his underperformance deprived the victim of at least $500, although without the specific $900 amount it might not be possible to reach this conclusion.

(c) Similarly, in support of Count 5, the State presented testimony that: (1) the victim paid Stratacos $3,000 up front on a $4,000 contract to build a storage shed; (2) Stratacos stopped working after installing the floor and framing three of the walls; and (3) the victim had to spend about $3,000 more to purchase materials that Stratacos was supposed to provide. Given that the $4,000 contract was meant to cover labor and materials, the evidence that the victim had to spend $3,000 on materials alone to complete the work Stratacos left undone allowed the jury to rationally conclude that his underperformance deprived the victim of more than $500.

(d) As to Count 8, however, the State failed to produce evidence demonstrating any shortfall to the alleged victim, Collins, Moody and Company. The Company's representative, Scott Collins, testified that: (1) the Company paid Stratacos a total of $6,867 on a $10,200 contract to insulate and reseal its office building's roof; and (2) Stratacos delivered most if not all of the materials for the project, but he and some helpers performed just one day of work. Collins did not say how many days of work the project was expected to take, specify what amount of the contract or the advance payments was for materials and what amount was for labor, or assign a dollar value to either the labor or the materials that Stratacos actually provided. Collins did say that the Company paid another contractor $7,800 to complete the roof, and the State introduced a copy of the invoice from

the new contractor. However, neither Collins nor the invoice specified what the additional $7,800 paid for in terms of labor, materials, or both.

Unlike the testimony of the victims of Counts 4 and 5, the evidence regarding Count 8 was insufficient for the jury to find, directly or by deduction, the value of the services Stratacos actually provided in exchange for what he was paid. The evidence showed that Stratacos performed some portion of the contract labor and delivered most or all of the materials covered by the contract, and the State did not present any evidence that allowed the jury to determine whether the services the Company received were worth less than the $6,687 it paid Stratacos. Thus, there was no direct evidence that the materials Stratacos delivered were worth less than $6,867. Nor did the evidence that the new contractor charged the Company $7,800 allow the jury to infer the value of the labor and materials that Stratacos had provided.

The evidence did not establish that what the new contractor did under its contract was limited to completing the promised services that Stratacos had left undone under his contract. The new contractor was paid more than twice the $3,333 left to Stratacos under his contract with the Company. But the new contractor may have charged much more for the labor on the project than Stratacos did, or performed work beyond that promised by Stratacos, or purchased more expensive materials instead of using those that Stratacos left behind, or repaired damage done by Stratacos's failure to seal the roof properly before abandoning the job. Cf. *Graham v. State*, 251 Ga. App. 395, 397 (554 SE2d 528) (2001) (holding that, under OCGA § 16-8-12 (a), "the replacement cost" for the item the defendant stole does not settle the question of that item's value because " '[t]he value of property which is the subject of the theft is the fair cash market value . . . at the time and place of the theft' " (citation omitted)). Without more detailed evidence, the only way the jury could have concluded that Stratacos intended to ultimately deprive the Company of any property, much less more than $500, is by assigning values to the labor and materials that he provided based on the jury's own estimations. Such a determination would be speculative rather than properly based on the evidence presented.

As our analysis of the other counts at issue indicates, the State did not need to present much more evidence than it did on Count 8 to prove a violation of OCGA § 16-8-3 (a) and (b) (5). But the limited evidence the State did present was insufficient — likely because the State took the position at trial that the value of the promised work

actually done by Stratacos did not need to be proved at all. Accordingly, Stratacos's conviction on Count 8 of the indictment must be reversed.

*Judgment affirmed in part and reversed in part. Hunstein, C. J., Thompson, P. J., Benham, Hines and Melton, JJ., and Judge Reuben M. Green concur. Blackwell, J., disqualified.*

DECIDED JULY 11, 2013.

*Nathanael A. Horsley*, for appellant.
*Kenneth W. Mauldin, District Attorney, James V. Chafin, Assistant District Attorney*, for appellee.